## POPE & TALBOT, Inc., v. GUERNSEY-WESTBROOK CO.

### No. 11320.

Circuit Court of Appeals, Ninth Circuit.

Jan. 8, 1947.

Lillick, Geary, Olson & Charles, Ira S. Lillick, Gilbert C. Wheat and Edward D. Ranson, all of San Francisco, Cal., for appellant.

Farnham P. Griffiths, Charles E. Finney, Martha T. Naylor, and McCutchen, Thomas, Matthew, Griffiths & Greene, all of San Francisco, Cal., for appellee.

Before DENMAN, HEALY and ORR, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment in a suit at law awarding the appellee damages in the amount of freight moneys deducted by appellant from the proceeds of an agreed sale at Los Angeles, California, by appellant of appellee's lumber shipped on the appellant's steamer Absaroka on the abandonment of that vessel's voyage from St. Helens, Oregon, to Brooklyn, New York.

In the case of Pope & Talbot, Inc. v. Blanchard Lumber Co. of Seattle, 9 Cir., 159 F.2d 134, we have held justified the abandonment of the voyage after the torpedoing of the vessel on December 24, 1941, by a Japanese submarine off the Port of Wilmington, California, and upheld the withholding of freight moneys from the proceeds of the sale of the Blanchard Lumber Company's lumber under the "freight earned" clause of the bill of lading in that case.

In the instant case the agreement of the parties is different. The appellee obtained from appellant a C.I.F. contract for the purchase of appellant's lumber to be carried in appellant's Absaroka to Brooklyn, New York. The contract of purchase is evidenced by the typed acceptance by appellant of appellee's order in the following terms:

"Prices as noted above per M' B.M.C. I.F. end of ship's slings Brooklyn, N. Y. terms: Ocean freight net cash on arrival of steamer: Balance 98% sight draft with documents attached including negotiable Bill of Lading to Order of Marine Midland Trust Co. of New York."

On the reverse side of the Acceptance are printed "Terms and Conditions of

Sale," A-G. E provides: "E. Any government tax, state or federal, or any change in freight rate effective after date of this order and before shipment shall be for purchaser's account."

F is as follows: "F. In the case of intercoastal shipments all terms of the steamship bill of lading are made a part of this contract."

By the last clause of the Acceptance is incorporated in the contract the following freight earned clause of the bills of lading: "Full freight to destination * * * are due and payable to the Carrier at its option upon receipt of the Goods by the latter; and the same * * * shall be deemed fully earned and due and payable to the Carrier at any stage, before or after loading of the service hereunder, without deduction (if unpaid) or refund in whole or in part (if paid) Goods or Vessel lost or not lost * * *"

Appellee claims that the provision of the last clause that the freight is "due and payable to the Carrier at its option upon receipt of the Goods by the latter" limits the remaining freight earned provisions to the case where the carrier exercises its option to make the freight due and payable upon receipt of the goods. The district court correctly construed the words "the same" as applying to the words "Full freight to destination" and not to the words "due and payable to the Carrier at its option upon receipt of the Goods." The freight clause must be construed as a whole. Appellee's contention would make meaningless the later words "after loading" with reference to freight then becoming "due and payable." It is without merit.

Appellant claims that despite the fact that its Acceptance made a contract of sale which embodied the freight earned clause, the bill of lading is to be deemed a complete and separate contract of affreightment and it alone is to determine the right to earned freight, as if made with another carrier. We do not agree.

The plain language of the Acceptance embodying the terms of the bill of lading is a single agreement.

The question here requires the construction of the typed phrase "Ocean freight net cash on arrival of steamer" in connection with the printed provision that freight "shall be deemed fully earned and due and payable to the Carrier at any stage, before or after loading of the service [of carriage] hereunder."

It is a rational construction of this printed language that the carrier is to determine the stage of the voyage at which the freight is to be deemed earned and that the typed words "Ocean freight net cash on arrival of steamer" constitute arrival of the steamer at Brooklyn as the carrier's choice of the "stage * * * after loading" when the freight is "deemed fully earned." Cf. Toyo Kisen Kaisha v. W. R. Grace & Co., 9 Cir., 53 F.2d 740, where the freight earned clause is less favorable to the cargo owner.

It is true that other constructions more favorable to the carrier may be conceived, but it is the seller-carrier's printed document, in whose framing the buyer had no part, which is under construction. The usual rule applies that if ambiguous inferences of its terms are rationally conceivable, that one controls which is favorable to the buyer-shipper. Northern Pacific Railway v. Twohy Bros., 9 Cir., 95 F.2d 220, 223; Texas & Pacific Railway Co. v. Reiss, 183 U.S. 621, 626, 22 S.Ct. 253, 46 L.Ed. 358. Cf. New York Life Insurance Co. v. Hiatt, 9 Cir., 140 F.2d 752, 754.

The district court correctly held that in view of the ambiguous interpretations of the typed and printed form portions of the contract, the appellant had not earned its freight and should not have retained it from the proceeds of the sale of the cargo. Its judgment is

Affirmed.