SCHIRMER STEVEDORING CO., LTD.,
Appellant,

v.

SEABOARD STEVEDORING CORP.,
Brady Hamilton Stevedore Co., Williams, Dimond & Co., N. J. Goulandris, Ltd., et al., Appellees.

FINANCIERA PERUANA, S.A.,
Appellant,

v.

SEABOARD STEVEDORING CORPORATION et al., Appellees.

N. J. GOULANDRIS, LTD., et al.,
Appellants,

v.

MARINE CHARTERING CO., Inc.,
Appellee.

No. 17419.

United States Court of Appeals
Ninth Circuit.

June 29, 1962.

Lillick, Geary, Wheat, Adams & Charles, James L. Adams, Nichols & Rogers, by Alan H. Nichols, San Francisco, Cal., for appellant Schirmer Stevedoring Co.

McCutchen, Doyle, Brown & Enersen, Russell A. Mackey, and Bryant K. Zimmerman, San Francisco, Cal., for appellant N. J. Goulandris, Ltd., and others.

Wallace, Garrison, Norton & Ray and M. Garrison, Jr., San Francisco, Cal., for appellant Financiera Peruana, S.A.

Graham, James & Rolph, and Robert E. Patmont, San Francisco, Cal., for appellees.

Before HAMLEY, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

These are appeals from a final judgment in an interpleader action brought under the Federal Interpleader Act (28 U.S.C. §§ 1335, 1397 and 2361). The interpleading plaintiff, Marine Chartering Company (Marine), is a voyage charterer of the vessel, Areti S. Claimants are the owners of the vessel, N. J. Goulandris, Ltd., et al. (Owners), an assignee, Financiera Peruana, S.A. (Financiera), of a time charterer of the vessel, Naviera Andes Peruana, S.A. (Navandes), and a stevedoring company which rendered stevedoring services to Navandes, the Schirmer Stevedoring Company (Schirmer). Six other claimants in the court below have not appealed. The court awarded Owners the $48,337.61 deposited by Marine, and out of this awarded $91.79 costs and $5,000 attorney's fees to Marine. Schirmer and Financiera appeal from the judgment awarding the deposit to Owners and Owners appeal from the order allowing Marine attorney's fees and refusing to allow Owners, as prevailing parties, to

recover the attorney's fees as costs against the losing claimants. Marine asks that it be awarded attorney's fees for this appeal. This request we are denying. We have jurisdiction under 28 U.S.C. §§ 1291, 1294(1). On the appeals of Financiera and Schirmer we are affirming. On that of Owners, we are reversing.

On October 27, 1958, Owners time chartered [1] the vessel to Navandes. The time charter provided in pertinent part: Navandes was to make payment "semimonthly in advance" and "failing the punctual and regular payment of the hire, or bank guarantee, or on any breach of this Charter Party, the Owners [were] at liberty to withdraw the vessel from the service of [Navandes] without prejudice to any claim they (the Owners) may otherwise have on [Navandes]" (clause 5). The charter further provided: "The Owners shall have a lien upon all cargoes and all sub-freights for any amounts due under this Charter * * * [Navandes] will not suffer nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners * * *".

On February 19, 1959, Navandes and Marine entered into a voyage charter.[1] The voyage was to be from ports on the Pacific Coast, starting with Vancouver, B. C., to ports in the Caribbean Sea. On April 6 and April 16, 1959, Navandes purported to assign its rights to the freights under the voyage charter to Financiera, but the trial court found it unnecessary, as do we, to determine the assignment's validity.

From approximately May 1 to May 4, Schirmer performed stevedoring and other services for the Areti S. The amount owing Schirmer for its services for the Areti S. was $8,994.85. It also performed services for three other vessels controlled by Navandes, which owes $34,756.45 for those services.

---

1. As to the differences between a time charter and a voyage charter, see Gilmore and Black, The Law of Admiralty, 170–71 (1957).

On May 27, 1959 the vessel was delivered under the voyage charter in British Columbia for loading; she did not leave her last loading port until June 18, 1959. On June 10, 1959, Owners withdrew the vessel from the service of Navandes, pursuant to clause 5 of the time charter. The justification was: at all times Navandes had been hard put to pay the charter hire, having paid the charter hire two days late in the early part of May and four days late in the latter part of May; in the first week of June Navandes had closed its home office and its San Francisco agent had resigned; Navandes, after demand, failed to pay hire and overtime due on June 10 in the amount of $10,718.38; and Navandes had failed to pay for bunker fuel, pilotage, fumigation and other charges incurred in various loading ports ($8,-900)—charges which, under the time charter, Navandes should have paid. Owners notified Navandes on June 10, by letters to its New York representatives and to its home office in Lima, Peru, that the vessel was withdrawn.

Also on June 10, after the withdrawal, Owners entered into a voyage charter with Marine having substantially the same terms as the previous voyage charter. Loading at the last loading port was completed on June 18, 1959, and the ship thereafter transported the goods to the Caribbean. The total freights earned under the terms of the February 19 and June 10 voyage charters, less disbursements calculated by Marine, was $48,337.61. $34,445.48 in freights (not taking into account disbursements) had been "earned", via loading on board, before Owners' withdrawal.

On June 5, 1959, Schirmer filed a libel in personam against Navandes for stevedoring services, and on June 9 and June 18, served writs of foreign attachment on Marine, pursuant to California Code of Civil Procedure § 542(6). Although there is some doubt in our minds as to the validity of these attachments under California Code of Civil Procedure § 537, we assume their validity, so far as procedure is concerned, for the purpose of this opinion. On July 2, Schirmer obtained a default judgment against Navandes. On June 18, Schirmer filed a libel in rem, to which no response was made, against the freights of all the vessels on which it had performed stevedoring services for Navandes, including the Areti S.

1. *The appeal of Financiera.*

The court was correct in holding that Owners prevailed over Financiera. Financiera relies upon Clause 15 of the voyage charter, which provides:

"Full freight to be prepaid, less disbursements for Owners' account at loading ports, in U.S. dollars at San Francisco upon departure of vessel from last loading port. Freight shall be deemed earned on cargo as loaded on board and is discountless and non-returnable vessel and/or cargo lost or not lost."

The first sentence specifies when freights become due, i. e., "upon departure of vessel from last loading port". This was June 18, *after* the withdrawal of the vessel on June 10.

The second sentence deals with the time as of which the freights are "deemed earned". It has a different purpose; it deals with risk of loss, so that Marine would not be able to recover prepaid freights, and would be required to pay unpaid freights to Navandes, if the ship were lost, or if the voyage were interrupted through no fault of Navandes. (See e. g. Mitsubishi Shoji Kaisha Limited v. Societe Purfina Maritime, 9 Cir., 1942, 133 F.2d 552; Allanwilde Corp. v. Vacuum Oil Co., 1919, 248 U.S. 377, 39 S.Ct. 147, 63 L.Ed. 312). Such a clause does not make the freight "due" on loading, if another time for payment is specified in the contract. (cf. Pope & Talbot v. Guernsey-Westbrook Co., 9 Cir., 1947, 159 F.2d 139; Toyo Kisen Kaisha v. W. R. Grace & Co., 9 Cir., 1931, 53 F.2d 740). Financiera cites two cases for the proposition that the rights of an assignee of a time charterer to freights "earned" before withdrawal by the owner, are superior to the

rights of the owner: Layne & Bowler Corp. v. U. S. Shipping Board Emergency Fleet Corp., 9 Cir., 1928, 27 F.2d 39; In re Atlantic Gulf & P. S.S. Co., D. Maryland, 1923, 289 F. 145, aff'd 3 F.2d 438. But these cases involved assignment of freights that actually became due before withdrawal.

■ On the theory that the right to freights is "incident to ownership" (see Layne & Bowler Corp. v. U. S. Shipping Board, supra), it is held that freights not due at the time of withdrawal, but becoming due thereafter, are the owner's and not the assignee's. Layne & Bowler Corp. v. U. S. Shipping Board Emergency Fleet Corp., supra, 9 Cir., 1928, 27 F.2d 39; In re Atlantic, Gulf & P. S.S. Co., supra, D.Maryland, 1923, 289 F. 145, 152). One case suggests that the assignee must have reason to know that he takes the risk of the freights not becoming "due" until after a withdrawal, i. e., he must have reason to know that the assignor is not the owner. (Cf. In re Atlantic G. & P. S.S. Co., supra, at p. 152, involving foreclosure by a mortgagee.) The case is of no help to Financiera; it is clear that Financiera knew that Navandes was not the owner. Financiera's position is no better than that of Navandes, its assignor. The latter's rights depend upon the February 19 voyage charter. The ship was withdrawn by reason of Navandes' default, and at a time when no freights were "due" to Navandes. We need not decide whether the result would be different if the withdrawal had occurred after departure from the last loading port, on June 18.

2. *The appeal of Schirmer.*

■ The court was correct in holding that Schirmer did not acquire a maritime lien on the deposited freights of the Areti S. The court's conclusion that none of the services was rendered for the voyage charter with Marine is supported by the evidence. Maritime liens may be obtained against freights, independent of any lien against the vessel. (U. S. v. Freights, etc., of The S.S.

Mount Shasta, 1927, 274 U.S. 466, 47 S. Ct. 666, 71 L.Ed. 1156; Freights of the Kate, S.D.N.Y., 1894, 63 F. 707.) A stevedore's maritime lien is now based on § 971 of the Federal Maritime Lien Act, (41 Stat. 1005–06, 46 U.S.C.A. §§ 971–75) which speaks of a lien upon the "vessel". We assume for the purpose of this opinion that "vessel" includes "freights", since the general rule is that if a maritime lien attaches to a vessel it also attaches to its freights, which are incident to the "vessel". (Gilmore & Black, The Law of Admiralty, 511 fn. 80; The Surico, W.D.Wash., 1930, 42 F.2d 935; U. S. v. Certain Subfreights due Steamship Neponset, D.Mass., 1924, 300 F. 981, 989, rev'd on other grounds, U. S. v. Robins Dry Dock & Repair Co., 1st Cir., 1926, 13 F.2d 808; see In re Atlantic Gulf & Pacific S.S. Co., D.Md., 1923, 3 F.2d 309). But we think that freights "incident" to a vessel for the purposes of the lien here asserted under the Maritime Lien Act are only those freights that the vessel expects to earn in the particular voyage in connection with which services were rendered. See Whitcomb v. Emerson, D.Mass., 1892, 50 F. 128; In re Atlantic Gulf & Pacific S.S. Co., D.Md., 1923, 3 F.2d 311. Maritime liens are secret liens; we think that it would be unwise and productive of much mischief to extend the stevedore's lien upon the vessel (and, we assume, upon the freights to be earned in the voyage for which the services are rendered) to freights arising from a subsequent voyage with which the stevedore has had nothing to do. The stevedore's services benefit the vessel: hence his lien upon the vessel; they benefit the voyage: hence the lien (which we assume) upon the freights of the voyage. We will not extend the lien to freights of a voyage not so benefited. (Cf. Freights of the Kate, S.D.N.Y., 1894, 63 F. 707, 714, 724).

The foregoing views make it unnecessary for us to consider whether Schirmer was prevented from obtaining a lien, by the "no lien" clause in the time charter, or by the Owner's lien under that char-

ter, or by 46 U.S.C.A. §§ 972 and 973. (See United States v. Carver, 1923, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361; United States v. Robins Dry Dock & Repair Co., 1 Cir., 1926, 13 F.2d 808).

Schirmer contends that its writs of attachment of June 9 and 18, 1959 were effective, the former as to all freights payable on account of cargo loaded prior to June 9 and also as to freights payable on account of cargo loaded after June 9, and the latter as to all freights involved. However, the attachments, even if effective as to debts actually owing, which we assume, are not effective in this case. "Debts" may include unmatured debts (see Brainard v. Rogers, 1925, 74 Cal.App. 247, 239 P. 1095), but it does not include rights under a still executory contract. (E. g. Redondo Beach Co. v. Brewer, 1894, 101 Cal. 322, 35 P. 896). The attaching creditor can get no more than the debtor has, (cf. Watwood v. Steur, 1949, 89 Cal.App.2d 620, 201 P.2d 460), and whatever rights Navandes had under the voyage charter with Marine had been ended by Navandes' default under the time charter and the withdrawal of the ship.

Schirmer also contends that there was no effective "withdrawal" as to the voyage charter, since the cargo was not unloaded. Mere notice of withdrawal to the time charterer is not enough, as long as the vessel remains under control of the the charterer, i. e., while it is in the process of making a voyage in the charterer's service. (See Luckenbach v. Pierson, 2 Cir., 1915, 229 F. 130 (dictum)). Here, by entering into a contract with Marine, Owners, already managing and navigating the vessel, made it clear that Navandes no longer was in control as time charterer. Since the new charter of June 10 was to Marine, we do not think that Owners were obliged to unload the vessel in order to make the withdrawal effective as against Navandes. The consent of Marine, manifested by accepting the new charter, is enough, under the circumstances. To require unloading and re-loading in this case would exalt form over substance to an unreasonable and unnecessary degree.

The trial court's finding that, in withdrawing the vessel and entering into a new charter with Marine, the owner was not conspiring to defeat the interests of Navandes and its creditors, is supported by the evidence. So is the finding that Owners and Marine, in the new charter, did not undertake to assume the obligations of Navandes under the old one.

*3. The appeal of Owners.*

Owners contend that the trial court erroneously awarded Marine reasonable attorney fees of $5,000, and, in any event, erroneously refused to assess this amount as "costs" against the losing claimant. Actions in interpleader or in the nature of interpleader are provided for in 28 U.S.C. § 1335. Section 2361 of 28 U.S.C. provides that in such actions, the "district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment". Under this provision, federal courts have continued the former equity practice of allowing attorney fees to interpleading plaintiffs in strict actions of interpleader. (E. g. Mutual Life Ins. Co. v. Bondusant, 6 Cir., 1928, 27 F.2d 464; Treinies v. Sunshine Mining Co., 9 Cir., 1938, 99 F.2d 651, aff'd., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85). The reasons are that the plaintiff has benefited the claimants by promoting early litigation on ownership of the fund, thus preventing dissipation, (see Louisiana State Lottery Co. v. Clark, E.D.La., 1883, 16 F. 20; cf. Trustees v. Greenough, 1881, 105 U.S. 527, 26 L.Ed. 1157) and that the plaintiff should not have to pay attorney fees in order to guard himself against the harassment of multiple litigation. But, although the court may have interpleader jurisdiction under 28 U.S.C. § 1335, attorney fees may be denied to the plaintiff when he has some interest in the outcome, as in an action in the nature of interpleader. (Century

Insurance Co. v. 1st National Bank, 5 Cir., 1939, 102 F.2d 726; Groves v. Sentell, 1893, 153 U.S. 465, 485–486, 14 S.Ct. 898, 38 L.Ed. 785.

■ We think that the proper rule, in an action in the nature of interpleader, is that the plaintiff should be awarded attorney fees for the services of his attorneys in interpleading. But if there is a contest between plaintiff and the interpleaded parties, either as to the correctness of the amount deposited or as to any interest of plaintiff in the fund, the court may not, in the absence of special circumstances, award attorney fees for the services of his attorneys in connection with such contest. Here, the record makes it clear that much of the services of Marine's attorneys related to such contested issues, but it does not show that the amount awarded was limited to services related to the interpleader. In this, the court erred.

■ Marine deposited $47,642.94 (later raised to $48,337.61 by stipulation). This sum was arrived at by subtracting from freight for cargo loaded both before and after June 10, 1959, special deductions from freight authorized by the voyage charter and authorized disbursements at the loading ports on Navandes' account. Unilateral, but uncontested, adjustments of a fund do not make an interpleading plaintiff "interested" so as to preclude the awarding of attorney fees. (McNamara v. Provident Savings Life Assurance Society, 5 Cir., 1902, 114 F. 910). But the amount deposited by Marine was contested.

The stevedoring claimants below contended that Marine should not be discharged as a disinterested shareholder because it should have deposited $75,-332.64, the total amount of freight without deduction or offset. It was evidently not until early July, well after the Areti S. departed from its last loading port on June 18, that Marine made disbursements on Navandes' account. Many of the stevedoring claimants had obtained writs of foreign attachment on the freights in late June. Schirmer had per-fected its attachment by a default judgment against Navandes on July 2—evidently before Marine had made any disbursements. The stevedoring claimants contended that it was improper for Marine to pay off the creditors of Navandes after the attachment and to set-off these payments against the freights. Although it seems clear that a garnishee may set-off matured obligations at the date of garnishment (Wilhelmsens D. A. S. v. Canadian Venezuelan Ore Co., 2 Cir., 1915, 224 F. 881; John M. C. Marble Co. v. Merchants' Nat. Bank, Cal., 1911, 15 Cal.App. 347, 115 P. 59; Midway Five Oil Co. v. Citizens' Nat. Bank, Cal., 1914, 25 Cal.App. 366, 143 P. 800), it is not a plainly frivolous argument that a garnishee should not be able to set-off claims which it has itself caused to arise after garnishment.

Further, Marine presented two careful memoranda arguing that its payments and set-offs subsequent to the attachments were justified, and that the stevedoring claimants never obtained maritime liens. The affidavit of Marine's attorney in the interpleader proceedings says that legal services included preparation and filing of the complaint in interpleader, securing the issuance of orders of the court restraining further prosecution against Marine, and preparing the details of plaintiff's accounting of the freight moneys payable by it. For these services, Marine may be awarded attorney fees. The affidavit also shows numerous services that could only relate to the contested issues between Marine and the claimants. Marine may not be awarded attorney fees from the fund for such services in the absence of special circumstances, such as bad faith of the claimants. As to them, it stands in the same position as any other litigant.

■ The award of attorney fees is fundamentally a matter of discretion of the trial court. (Bank of China v. Wells Fargo Bank & Union Trust Co., 9 Cir., 1953, 209 F.2d 467). But here the court seems to have proceeded on the erroneous assumption that Marine's successfully maintaining the interpleader action and

obtaining discharge, automatically entitled it to all of the attorney fees it incurred in obtaining the discharge. On the other hand, if Marine acted in good faith, as the record indicates that it did, the court does have power to allow it attorney fees for services relating to the interpleader phase of the action.

■ If the court on remand awards attorney fees to Marine, it has discretion to decide whether or not to assess the amount of such fees, as costs to Owners, against the losing claimants. It may charge the fund payable to Owners, as winning claimants, with the interpleading plaintiff's attorney fees. (See Eagle Star & British Dominions v. Tadlock, S.D., Cal., 1938, 22 F.Supp. 545, 548–49). It may charge the losing claimants. (Kohler v. Kohler, 9 Cir., 1939, 104 F.2d 38, 41 (dictum); see Board of Education v. Winding Gulf Collieries, 4 Cir., 1945, 152 F.2d 382,—applying state law; 3 Moore's Federal Practice, 2d Ed. p. 3053, ¶ 22.16) It may divide the plaintiff's attorney fees among the claimants. (Kohler v. Kohler, supra)

■ The court's order refusing to tax costs, dated April 4, 1961, indicates that the court did exercise its discretion. But the. order also indicates that it was the court's view that to charge Marine's attorney fees, awarded to it, to the losing claimants, as part of Owner's costs, would be to award attorney fees to Owners. This is not correct. Thus the court's discretion seems to have been guided by a misconception. The judgment directs that the fees awarded to Marine are to be paid from the fund, and the balance is to be paid to Owners. In effect, the fees awarded Marine thereby become costs charged to Owners. To charge all or part of Marine's fees to some or all of the losing claimants instead of against the fund, or to charge them against the fund and then award Owners the same amount, or part of it, against some or all of the losing claimants, is not to award Owners any attorney fees. As against Owners, the fees of Marine are "costs", although not the type of costs to which a litigant is entitled as a matter of right. (See Rule 54(d) F.R.Civ.P., 28 U.S.C.A.). We think it best that the court again exercise its discretion, with this distinction in mind, if it awards attorney fees to Marine upon remand. Since we are reversing that part of the judgment awarding attorney fees to Marine, we do not think that it would be proper to award it additional attorney fees for this appeal.

Paragraph 1 of the judgment of March 7, 1961, and the order of April 4, 1961, are reversed, and those matters are remanded for further proceedings consistent with this opinion. In all other respects the judgment is affirmed. The motion of Marine that it be awarded attorney fees on this appeal is denied.

