**In re TECHNICAL EQUITIES CORPORATION, Debtor.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**The OFFICIAL UNSECURED CREDITORS' COMMITTEE OF TECHNICAL EQUITIES CORPORATION, et al., Defendants.**

**Bankruptcy No. 3-86-00366-LK/JRG.**
**Adv. No. 3-86-0449-LK/JRG.**

United States Bankruptcy Court, N.D. California.

Dec. 15, 1993.

Allen J. Ruby, Morgan, Ruby, Schofield, Franich & Fredkin, San Jose, CA.

D. Wayne Jeffries, Pettit & Martin, San Francisco, CA.

Archie S. Robinson, Robinson & Wood, Inc., San Jose, CA.

Michael F. Perlis, Stroock & Stroock & Lavan, Los Angeles, CA.

Michael Isaacs, Rosenblum, Parish & Isaacs, San Francisco, CA.

James Lopes, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, CA.

Mike C. Buckley, Crosby, Heafey, Roach & May, Oakland, CA.

Joseph W. Cotchett, Marie Seth Weiner, Cotchett, Illston & Pitre, Burlingame, CA.

## OPINION

JAMES R. GRUBE, Bankruptcy Judge.

### I. INTRODUCTION.

Before the court are plaintiff and defendant's cross-motions seeking a determination of the amount National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union") must deposit in the court's registry to satisfy its liability in this interpleader action. The motions seek an end to the years of litigation between National Union and eight plaintiff groups ("Claimants").

### A. *Factual and Procedural Background.*

Technical Equities Corporation ("Technical Equities") was in the business, among others, of providing an assortment of investment and financial services to approximately 700 clients. National Union was the primary insurance carrier for Technical Equities and issued a Directors and Officers Liability Policy ("D. & O. Policy") to Technical Equities and its directors and officers. In addition to the D. & O. Policy, National Union issued a Comprehensive General Liability Policy ("C.G.L. Policy") and an umbrella policy to Technical Equities. Although the D. & O. and C.G.L. Policies are discussed in this memorandum, only the D. & O. Policy is the subject of this action.

In the course of its financial services business, Technical Equities engaged in fraudulent investment practices. As early as January 1986 Technical Equities' clients began filing actions for fraud, negligent misrepresentation, breach of fiduciary duty, and negligence. Defendants in the actions included Technical Equities, its directors and officers, auditors, banks, and numerous insurance companies that had issued policies insuring Technical Equities and its directors and officers. In response to the resulting flood of lawsuits, Technical Equities filed its voluntary petition for reorganization under Title 11 of the United States Code on February 7, 1986.

On November 14, 1986, the Official Unsecured Creditors' Committee of Technical Equities filed its adversary complaint seeking partial relief in the form of an injunction restraining National Union from paying D. & O. Policy proceeds to any individual claimants. On August 24, 1987, National Union filed its interpleader action as a counterclaim and cross-complaint in the pending adversary proceeding. Although the interpleader action was initially brought under 28 U.S.C. § 1335, it was confirmed under Federal Rule of Civil Procedure 22 and National Union was allowed to post a $8.5 million bond. That bond was later replaced with a $10 million bond subject to reduction by properly allocated, reasonable defense costs pursuant to an Order of the bankruptcy court entered on December 29, 1987 ("1987 Order") as modified on April 15, 1988.

Claimants, who have either received state court judgments or hold stipulated liquidated claims against Technical Equities and its directors and officers under the D. & O. Policy, seek compensation from the Policy proceeds. A plan of distribution was negotiated by the Claimants as a settlement of the disputes among themselves. Although the amount for which National Union would be liable was not then determined, on July 6, 1992, the bankruptcy court entered its Order ("1992 Order") establishing proportional distribution in

accordance with Claimants settlement agreement.[1]

In prior separate rulings the bankruptcy court left the issues of National Union's liability under the D. & O. and C.G.L. Policies to the California courts in which actions were pending. Both *Helfand v. National Union Fire Insurance Company*,[2] involving the D. & O. Policy and *Chatton v. National Union Fire Insurance Company*,[3] involving the C.G.L. Policy, have reached final determinations. The relevant holdings of both decisions are summarized below.

### B. *Helfand.*

National Union issued a pre-paid insurance policy insuring directors and officers of Technical Equities. The D & O. Policy provided a maximum of $10 million per year for losses based on claims actually made against the Policy during the course of each fiscal year beginning August 2, 1984; August 2, 1985; and August 2, 1986. Investors defrauded by Technical Equities brought an action for declaratory relief in the California Superior Court to determine the scope of coverage under the D. & O. Policy. Plaintiffs asserted that National Union was liable for the maximum liability for all three years, $30 million, and that any costs incurred by National Union in defending the insureds did not reduce its liability, that is, the policy was not "self-consuming." National Union conceded that it was liable for the limits of the second policy year, but asserted that it was not liable in any amount for the first and third policy years and further asserted that the D. & O. Policy was self-consuming. The trial court agreed with plaintiffs on all points. It found coverage of $30 million for the first, second, and third policy years, and declared that defenses costs were not payable from the D. & O. Policy's liability limits. National Union appealed the trial court's decision.

In *Helfand v. National Union Fire Insurance. Co.*, 10 Cal.App.4th 869, 13 Cal.Rptr.2d 295 (Cal.Ct.App.1992), the court of appeal applied standard rules of contract interpretation and held that the plain meaning of the policy terms made it clear that costs of defending the directors and officers against claims were an element of loss payable against policy limits, thus the policy was, in fact, self consuming. *Helfand*, 13 Cal. Rptr.2d at 299. The court further held that National Union was not liable for claims under the first policy year because the unambiguous terms of the "claims made" policy made notice within the policy year an element of coverage and no claim had been reported to National Union in the first policy year. *Id.* at 303, 305.

The court then turned to the third policy year and reviewed the 1986 bankruptcy court approval of a compromise whereby National Union and the debtor-in-possession modified the original policy contract by cancellation of the third year coverage in exchange for post-petition coverage at a reduced amount. *Id.* at 308. In the court of appeal National Union argued that the consensual order precluded a finding of liability for the third policy year because the policy had been cancelled prior to the reporting of any claims. The court of appeal found that the D. & O. Policy provided reimbursement of indemnification by the corporation of the individual officers and directors and that the Policy "proceeds belong directly to the officers and directors." *Id.* at 310. The court held that the consensual order did not have preclusive effect as to the issue of third year coverage relying, in part, on the fact that the bankruptcy court order did not purport to determine the rights of the insureds and that notice to the officers and directors, and thus

---

1. The 1992 Order provided for the following distribution plan:

| | |
|---|---|
| T.E.P.L.G. plaintiffs | 70.71% |
| Federal class action plaintiffs | 8.73% |
| Bank of the West, Employee Stock Option Plan, and Pacific Western Bank | 10.07% |
| Toothman & Sweeney plaintiffs | 3.77% |
| Huddleson plaintiffs | .32% |
| Wilson, Sonsini plaintiffs | 2.51% |
| Baier plaintiffs | 2.01% |
| Caputo, Liccardo plaintiffs | 1.88% |

2. 10 Cal.App.4th 869, 13 Cal.Rptr.2d 295 (Cal.Ct. App.1992), *review denied* (Cal. Feb. 11, 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993).

3. 10 Cal.App.4th 846, 13 Cal.Rptr.2d 318 (Cal.Ct. App.1992), *reh'g denied* (Cal.Ct.App. Nov. 25, 1992).

their assignees, was constitutionally inadequate. *Id.* at 307–15.

The court of appeal affirmed the trial court as to the second and third policy years' coverage of $20 million. *Id.* at 317. Implicit in the court's affirmation was the finding that liability under each year's "claims made" policy attached no later than the end of that fiscal year, August 1, 1986 and August 1, 1987. National Union appealed to the California Supreme Court which denied its petition for review. National Union then filed a petition for a writ of certiorari with the United States Supreme Court seeking a reversal of the appellate courts's ruling of liability for the third policy year. *Helfand v. National Union Fire Insurance. Co.*, 61 U.S.L.W. 3854 (U.S. June 11, 1993). On October 7, 1993, the writ was denied. *Helfand v. National Union Fire Insurance Co.*, —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993).

## C. *Chatton.*

A declaratory relief action was also filed in the superior court seeking adjudication of coverage under the C.G.L. Policy and an umbrella policy issued by National Union. Plaintiffs asserted that their claims for emotional distress and negligent misrepresentation were covered by the bodily injury clause of the C.G.L. Policy, that the insureds' wrongful acts were "occurrences" within that clause, and that the advertising liability clause covered acts defined as "unfair competition" by the California Unfair Business Practices Act. Cal.Bus. & Prof.Code §§ 17200–17209 (West 1993). National Union appealed the decision of the trial court in favor of plaintiffs on all points.

The court of appeal, in *Chatton v. National Union Fire Insurance Co.*, 10 Cal.App.4th 846, 13 Cal.Rptr.2d 318 (Cal.Ct.App.1992), applied somewhat different rules of contract interpretation than did the court in *Helfand. Chatton*, 13 Cal.Rptr.2d at 322–23. The court held that emotional distress, without accompanying physical injury, did not constitute bodily injury within the plain meaning of the bodily injury clause. *Id.* at 324 (citing *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991)).

The court also held that the bodily injury clause of the C.G.L. Policy did not provide coverage for emotional distress resulting from investment losses caused by the negligent misrepresentations of the insured because such losses were uncovered intangible losses. *Id.* 13 Cal.Rptr.2d at 325, 327. Moreover, the court found that wrongful acts of Technical Equities were not policy "occurrences" because an "occurrence" is "accidental" and the insureds wrongful acts were "purposeful." *Id.* at 327–28. As to the advertising injury clause of the C.G.L. Policy, the court of appeal relied upon established authority to hold that such a clause provides coverage only for the common law tort of unfair competition, not for business practices prohibited under the California Unfair Business Practices Act. *Id.* at 329 (citing *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992)).

Thus, National Union's appeal of liability under the C.G.L. Policy was successful on all points. Although National Union has asserted otherwise, the *Chatton* court did not address, explicitly or implicitly, the issue of whether a duty to defend the policy insureds existed under the C.G.L. Policy. Claimants have not appealed the decision.

## D. *Issues Remaining to Be Decided.*

Following the California Court of Appeal's holding in *Chatton*, National Union's motion to dismiss the C.G.L. interpleader action was granted. A final decision as to the amount of the D. & O. Policy proceeds to be deposited and distributed depends on resolution of the following issues:

(1) Whether National Union should be required to pay interest on the D. & O. Policy proceeds which have not yet been deposited with the court;

(2) Whether National Union is entitled to recover attorneys' fees it incurred in filing the D. & O. interpleader action;

(3) Whether National Union is entitled to offset the defense costs it allocated to the D. & O. Policy against the D. & O. Policy proceeds; and

(4) If National Union is entitled to offset allocated defense costs, whether these costs should be subject to review.[4]

## II. NATIONAL UNION IS REQUIRED TO PAY INTEREST ON THE D. & O. POLICY PROCEEDS IT FAILED TO INTERPLEAD.

Essentially, *Helfand* held that National Union was liable for $20 million under the D. & O. Policy as follows: $10 million for the second policy year, with liability attaching, at the latest, on August 1, 1986; and $10 million for the third policy year, with liability attaching, at the latest, on August 1, 1987. Claimants argue that National Union should be required to pay interest on the policy proceeds which were not paid out when a party with a valid claim appeared, while National Union asserts that it should not be liable for payment of interest at all.

### A. *Legal Standard.*

■ Courts ordinarily require payment of interest to prevent unjust enrichment. The Ninth Circuit Court of Appeals has addressed the issue of whether a stakeholder is required to pay interest on the fund in an interpleader action in *Gelfgren v. Republic National Life Insurance Co.*, 680 F.2d 79 (9th Cir.1982); and *Unigard Mutual Insurance Co. v. Abbott*, 732 F.2d 1414 (9th Cir. 1984).

Just as in this action, *Gelfgren* involved a non-statutory interpleader of insurance policy proceeds under Federal Rule of Civil Procedure 22(1).[5] The *Gelfgren* court held that the awarding of interest in non-statutory interpleader actions is not automatic but depends upon equitable considerations. *Gelfgren*, 680 F.2d at 82. The court listed three factors to consider: "(1) whether the stakeholder unreasonably delayed in instituting

the action or depositing the fund with the court ...; (2) whether the stakeholder used the funds for his benefit and would be unjustly enriched at the expense of the claimants who have claim to the fund ...; and (3) whether the stakeholder eventually deposited the fund into the court's registry." *Id.* (citations omitted).

The court of appeals reversed the district court in part, holding that the district court abused its discretion in denying prejudgment interest to the successful claimant. The *Gelfgren* court emphasized the unjust enrichment of the insurer stakeholders as the basis for its reversal of the district court's ruling. The court pointed to the two year delay between the time a claim against the policy arose and the interpleader was filed, and the five year pendency of the interpleader action. *Id.* at 82. The court of appeals held that the awarding of interest for the seven year period would not prejudice the stakeholder, "since, though they have no claim to the fund, they have earned interest on it at a rate in excess of the statutory maximum and thus would be unjustly enriched."[6] *Id.* at 82.

*Unigard* involved a statutory interpleader action brought pursuant to 28 U.S.C. § 1335. In *Unigard* the Ninth Circuit upheld a district court's award of interest against two insurance companies in a statutory interpleader action. The insurance companies argued that they were not required to pay interest because they could have satisfied the interpleader statute by filing a timely bond for the maximum limits of the insurance policies in question. The court held that even if the insurance companies had filed a timely bond for the policy limits, "the district court would have had discretion to require payment of interest in order to prevent unjust

---

4. The parties also briefed and argued the issue of whether the court should delay distribution of the third year policy proceeds until the United States Supreme Court resolved National Union's appeal. While this issue existed at the time the motions were submitted, it has been rendered moot by the United States Supreme Court's denial of writ of certiorari on October 7, 1993. *Helfand v. National Union Fire Ins. Co.*, — U.S. —, 114 S.Ct. 84 (1993).

5. Fed.R.Civ.P. 22(1) is made applicable in adversary proceedings pursuant to Fed.R.Bankr.P. 9022.

6. Here, unlike the insurer in *Gelfgren*, National Union made no showing as to the amount of interest it earned on the policy proceeds during the period it held onto the proceeds, thus the court is unable to presume that an interest rate less than the statutory maximum was realized.

enrichment of the stakeholders." *Unigard,* 732 F.2d at 1419.

■ In *Gelfgren* and *Unigard* the Ninth Circuit Court of Appeals reversed one lower court's decision to deny interest and upheld a second court's decision to award interest in order to prevent the unjust enrichment of the stakeholder. It is clearly shown by *Gelfgren* that interest should be awarded for any period during which a stakeholder had the use of funds to which it was not entitled. *Unigard* further highlights the discretion which is vested in the trial court to make the determination as to whether liability for interest should be imposed.

National Union cites *Occidental Life Insurance Co. v. Row,* 271 F.Supp. 920 (S.D.W.Va.1967), to support its assertion that courts may use their discretion to deny interest where there are unique circumstances. In *Occidental Life* two siblings sought to charge the disinterested insurer interest on the funds retained prior to an interpleader action being filed. The district court found that neither of the two siblings who claimed an interest in the proceeds of a life insurance policy as against a third sibling had any title in the interpled proceeds. *Occidental Life,* 271 F.Supp. at 927. In spite of this finding the *Occidental Life* court went on to state that, had the issue been before it, it would not have charged the insurer interest on the proceeds not immediately paid when the claim matured. *Id.* The court relied upon the "unique circumstances" of the conflicting claims to the policy proceeds which the insurer believed could be settled between the claimants. *Id.*

■ While *Occidental Life* may correctly state the general proposition that the court has discretion to excuse the payment of interest, the case is not persuasive. The very

purpose of an interpleader action is to resolve conflicting claims to "property held by a third person having no interest therein." Black's Law Dictionary 817 (6th ed. 1990). There would appear to be nothing "unique" about the belief that the conflicting claims in *Occidental Life* could be resolved without resort to the court. Finally, as the two siblings were found to have no rights to the fund, the issue of interest was not truly before the court.

**B. The Equities of This Case Do Not Require a Departure From the General Rule That Interest Is Awarded to Prevent Unjust Enrichment.**

**1. Absent special circumstances, the court must require payment of interest to prevent unjust enrichment.**

■ After consideration of all the factors, the element of unjust enrichment surfaces as the most important factor the court must consider in deciding whether to require National Union to pay interest on the D. & O. Policy proceeds. In this case, as is true in almost all cases in which a stakeholder fails to deposit funds on the date it is first liable, National Union was unjustly enriched. As previously noted, National Union was found liable for $10 million on August 1, 1986 and an additional $10 million on August 1, 1987. National Union has enjoyed use of these funds, which it was not entitled to, for over seven and six years, respectively. While National Union posted a $10 million bond, the posting of a bond does not prevent the court from exercising its discretion to require interest to prevent unjust enrichment. *Unigard,* 732 F.2d at 1419. Absent special circumstances, it would be an abuse of discretion to excuse the payment of interest.[7]

7. Claimants argue that National Union unreasonably delayed in filing the interpleader action. Given the *Helfand* decision, the court finds that National Union delayed in filing this interpleader action for approximately one year for the second policy year and twenty days for the third policy year. The court finds the year-long delay for the second policy year to be unreasonable as National Union never contested its liability for the second policy year. Additionally, the court notes that up to the date of the last hearing, National

Union had not deposited any funds into the court's registry. Given these facts, it appears that all three of the factors listed in *Gelfgren* have been satisfied in this case. However, as noted above, the court will focus on the unjust enrichment factor. Thus, even if the court found that National Union did not unreasonably delay in filing the interpleader action, the court would still exercise its discretion to require National Union to pay interest to prevent unjust enrichment.

## 2. There are no special circumstances in this case.

██ National Union argues that equitable considerations show that this is a unique case in which the payment of interest should not be required. National Union alleges it has expended over $50 million in defending the insureds under the C.G.L. Policy. As previously noted, the *Chatton* court held that there is no coverage under that policy. *Chatton,* 13 Cal.Rptr.2d at 332. National Union argues that had the trial court in *Chatton* properly held that there was no coverage under the C.G.L. Policy, those defense costs would have been allocated to the D. & O. Policy and there would be no D. & O. interpleader fund. This argument depends on the following propositions: 1) that *Chatton* impliedly held that there was no duty to defend the insureds under the C.G.L. Policy; 2) that defense costs allocated to the C.G.L. Policy would have been incurred and could have been properly allocated under the D. & O. Policy; and 3) that there is legal authority for the proposition that National Union may reallocate attorneys' fees from the C.G.L. Policy to the D. & O. Policy. These three steps are conjunctive, that is, National Union must establish all three in order to persuade the court to excuse the payment of interest.

With regard to its liability as determined by *Helfand,* National Union does not actually attempt to reallocate attorneys' fees from the C.G.L. Policy to the D. & O. Policy.[8] Rather, it asserts that, because it could, but is choosing not to reallocate, this court should excuse the payment of interest.[9]

National Union failed to cite any authority to support its right to reallocate defense costs after the fact between the two different policies. The court finds National Union's equitable argument unpersuasive.

In National Union's moving papers it argues that it "has the right to reallocate de-fense expenses paid under the C.G.L. Policy to the D. & O. Policy, so that nothing will remain in the D. & O. interpleader fund."[10] National Union cites four cases in support of its position. *Gon v. First State Insurance Co.,* 871 F.2d 863, 868 (9th Cir.1989); *Okada v. MGIC Indemnity Corp.,* 823 F.2d 276, 282 (9th Cir.1987); *California Union Insurance Co. v. Club Acquarius,* 113 Cal.App.3d 243, 169 Cal.Rptr. 685 (Cal.Ct.App.1980); and *Hogan v. Midland National Insurance Co.,* 3 Cal.3d 553, 91 Cal.Rptr. 153, 476 P.2d 825 (1970).

However, the two Ninth Circuit cases cited by National Union merely support an insurer's right to apportion costs between covered and uncovered claims within the same policy. *Gon v. First State Insurance Co.,* 871 F.2d 863, 868 (9th Cir.1989) (insurer was entitled to apportion expenses between covered and uncovered claims, but could not do so at the expense of the insured); *Okada v. MGIC Indemnity Corp.,* 823 F.2d 276, 282 (9th Cir. 1987) (parties must apportion the costs such that the insurer pays only the amounts generated in defense of covered claims).

The two California cases similarly deal with allocation between covered and uncovered claims rather than the possibility of allocation between two different policies. In these cases, an insurer was held to an obligation to defend against all claims unless it could provide evidence of the right to allocate expenses between covered and uncovered claims within the same policy. *Hogan v. Midland National Insurance Co.,* 3 Cal.3d 553, 564, 91 Cal.Rptr. 153, 159, 476 P.2d 825 (1970) (insurer was liable for the entire amount of defense fees without reallocation because it did not provide "undeniable evidence of the allocability of specific expenses"); *California Union Insurance Co. v. Club Acquarius,* 113 Cal.App.3d 243, 248, 169 Cal.Rptr. 685 (Cal.Ct.App.1980) (where potential liability exists insurer is bound to

---

**8.** However, National Union asserts the right to reallocate to the extent that the court requires it to pay interest.

**9.** The court notes that this apparent "gift" is inconsistent with National Union's past conduct in asserting its rights through protracted litigation.

**10.** National Union's Memorandum of Points and Authorities in Support of Motion for Order Determining Full, Appropriate Amount of D & O Interpleader Fund at 6, *Technical Equities Corp. v. National Union Fire Ins. Co. (In re Technical Equities Corp.),* Ch. 11 Case No. 3–86–00366, Adv. No. 3–86–0449 (N.D.Cal. April 27, 1993).

defend against all claims involved in an action although a portion of all claims result in judgment for damages not embraced by the policy).

In its papers opposing the motion to terminate the interpleader action, National Union acknowledges that reimbursement of the defense expense paid under the C.G.L. Policy may be sought from the insureds without consideration of the D. & O. Policy because the two policies are separate:

> However, because National has consistently contended that all competing claims with respect to the D & O policy should be decided within the context of this D & O interpleader action (including claims of the insureds and the third-party claimants), and because National Union's claims against the insureds for reimbursement of defense expenses paid under the CGL policy may be resolved outside the context of this interpleader action, National Union recognizes it may be more appropriate to pursue the reimbursement claims outside this action, thereby preserving the D & O interpleader fund itself.

National Union's Memorandum of Points and Authorities in Opposition to Motion to Terminate Interpleader in Accordance with Prior Order of the Court at 16–17, *Technical Equities Corp. v. National Union Fire Insurance Co. (In re Technical Equities Corp.)*, Ch. 11 Case No. 3–86–00366, Adv. No. 3–86–0449 (N.D.Cal. May 11, 1993).

National Union has not met its burden of establishing that the equities of this case require a departure from the standard rule that interest is awarded to prevent unjust enrichment. National Union's equitable argument is less convincing given the fact that it cites authorities allegedly standing for the proposition that it may reallocate defense costs between two separate policies, when the authorities cited do not, in fact, support that proposition. National Union's equitable argument further loses credibility as National Union itself argued that it may be entitled to reimbursement of defense expenses under the C.G.L. Policy from the insureds who are not the Claimants in this action.

Having established that there is no authority to support National Union's argument to reallocate defense costs between the C.G.L. and D. & O. Policies, the court finds that National Union's "equitable considerations" argument lacks merit. The court finds that National Union had the use and benefit of the policy proceeds for a period of time when it was not entitled to the proceeds, thus the court holds that it must pay interest on these funds to prevent unjust enrichment.

### C. The Fifty-two Week Treasury Bill Rate Is Consistent With the Legal Standard's Focus on Unjust Enrichment.

Having established that National Union is required to pay interest on the policy proceeds, it is necessary to determine the appropriate interest rate to apply. Claimants alternatively assert that National Union should pay interest on the above amounts for the full term at either the 7.85 percent Treasury Bill rate in effect on February 6, 1986, or at the rate applied to judgments in California, 10 percent.

■ The Ninth Circuit generally applies the fifty-two week Treasury Bill rate settled immediately prior to the date of judgment unless the equities of a case require a different rate.[11] *In re Nucorp Energy*, 902 F.2d 729 (9th Cir.1990); *In re Damodar Bulk Carriers, Ltd.*, 903 F.2d 675 (9th Cir.1990); *In re Bloom*, 875 F.2d 224 (9th Cir.1989); *Trinidad Corp. v. S.S. Keiyoh Maru*, 845 F.2d 818 (9th Cir.1988); *Columbia Brick Works, Inc. v. Royal Insurance Co. of Am.*, 768 F.2d 1066, (9th Cir.1985); *Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280 (9th Cir.1984). A court may be viewed as abusing its discretion if it requires a rate different than the fifty-two week Treasury Bill rate without stating a reason for the departure. *Damodar Bulk Carriers*, 903 F.2d at 688; *Bloom*, 875 F.2d at 228.

---

11. This is the same rate used to calculate post-judgment interest pursuant to 28 U.S.C. § 1961 (1993).

■ The equities of this case do not demand a departure from the Treasury Bill rate as required by the Ninth Circuit cases cited. However, the court will depart from the practice of requiring payment at a constant rate. As discussed *supra*, requiring payment of interest is meant to prevent the unjust enrichment of National Union. Interest should not punish National Union or reward Claimants.[12] In furtherance of this purpose, the Treasury Bill rate used should be adjusted quarterly to reflect fluctuations in the rate over the six to seven year period National Union held the policy proceeds and interest should be compounded quarterly. These quarterly adjustments will help fairly reflect the approximate amount of interest National Union would have earned on the funds or paid to borrow such funds over the six to seven year unjust enrichment period.[13]

### D. National Union Is Required to Pay Interest From the Date it Was Liable Under the D. & O. Policy According to Helfand.

■ Claimants assert that interest should begin to accrue from either February 6, 1986, the date Technical Equities filed its bankruptcy petition, or August 24, 1987, the date National Union filed the D. & O. interpleader action. In determining the appropriate date from which interest should run, the focus is again on unjust enrichment.

Consistent with this focus, the court in *Gelfgren* held that the stakeholders were liable for prejudgment interest from the date the insurance benefit first became due. *Gelfgren*, 680 F.2d at 83. Similarly, the court in *Bank of China v. Wells Fargo Bank & Union Trust Co.*, 209 F.2d 467 (9th Cir.1953), required Wells Fargo Bank to pay interest from the date the Bank of China made demand for the funds. *Wells Fargo*, 209 F.2d

at 476 (denial of interest on bank account funds held after demand was made reversed where interpleading party could have protected itself by depositing fund in court's registry).

■ The court holds that interest should be calculated from the date on which National Union first became liable for the $20 million under the D. & O. Policy. Which, under the *Helfand* decision, is $10 million on August 1, 1986, the end of the second policy year, and an additional $10 million on August 1, 1987, the end of the third policy year. National Union was not entitled to the funds from those two dates forward. Accordingly, to prevent unjust enrichment, National Union is required to pay interest on the $10 million liability for the second policy year from August 1, 1986, and on the $10 million liability for the third policy year from August 1, 1987.

### III. NATIONAL UNION IS NOT ENTITLED TO RECOVER ATTORNEYS' FEES IT INCURRED IN FILING THE D. & O. INTERPLEADER ACTION.

National Union submitted its Application for Attorneys' Fees Incurred in Connection with the D & O Interpleader Action ("Fee Application") requesting $78,615.75. The time records cover the period from August 24, 1987, the date Technical Equities' Official Unsecured Creditors' Committee filed its First Amended Complaint, to July 29, 1988, the date National Union's interpleader was confirmed. The attorneys' fees incurred relate to the following specified tasks:

1) Preparation of 28 U.S.C. § 1335 interpleader complaint and service of same: $5,361.00;

---

12. The court denies Claimants' request for the application of the 10% California statutory interest rate on judgments. As stated previously, interest is awarded not to punish stakeholders but to prevent unjust enrichment. The quarterly adjustment to the Treasury Bill rate is effective in achieving this purpose. The 10% interest rate requested would effectively punish National Union instead of preventing its unjust enrichment.

13. The fifty-two week Treasury Bill rate reflects the rate at which the United States Government can borrow money. Few borrows are as credit worthy. There is some concern that the use of this attractive rate may encourage forum shopping in the federal courts. As the Treasury Bill rate is lower than that provided by state law and that at which almost any borrower can obtain funds, compounding interest quarterly prevents a long-tern advantage to National Union while still tracking unjust enrichment.

2) Preparation of motions for preliminary injunction and class certification, and argument of same: $30,183.50;

3) Preparation of opposition to motion to stay interpleader action and withdraw reference, and argument of same: $5,000.00;

4) Preparation of motion to confirm statutory interpleader, and argument of same: $23,383.75; and

5) Preparation of motions to confirm Rule 22 interpleader, and argument of same: $14,687.50.

## A. *Legal Standard.*

 Two Ninth Circuit decisions address the issue of attorneys' fees incurred in bringing interpleader actions: *San Rafael Compania Naviera, S.A. v. American Smelting & Refining Co.*, 327 F.2d 581 (9th Cir.1964) and *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188 (9th Cir.1962). It is fundamental that an award of attorney fees in an interpleader action is within the trial court's discretion and may be charged against the fund. *Seaboard*, 306 F.2d at 194–95.

 Ordinarily a stakeholder may be awarded fees and costs for the following services: 1) the preparation and filing of the complaint in the interpleader; 2) securing the issuance of orders of the court restraining further prosecution against the stakeholder; and 3) preparing the details of the stakeholder's accounting. *Id.* at 194. Absent special circumstances, a stakeholder may not recover attorney's fees related to a contest between the stakeholder and claimants either as to the correctness of the amount deposited or as to the stakeholder's interest in the fund. *Id.* The *Seaboard* court reversed the trial court's judgment awarding $5,000 in attorney's fees to the interpleading plaintiff holding that the trial court abused its discretion in awarding fees to the stakeholder for actions beyond simply filing the interpleader complaint. *Id.*

 A grant of attorney fees to an interpleader is not mandatory, but is permissive and within the trial court's discretion. *San Rafael*, 327 F.2d at 587. The trial court is limited only by the rule that attorney fees must not be granted if incurred in asserting an interest of the interpleader in the funds. *Id.* (trial court did not abuse its discretion in denying the interpleader's request for attorney's fees of $12,500 because there was a contest as to the appropriate amount of the fund as well as to the interest of the stakeholder in the fund).

Courts have consistently denied attorney's fees where the stakeholder was not a disinterested party. *Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (1st Cir.1962) (trial court did not err in denying the interpleader's request for awarding of fees because fees are "usually awarded out of the fund to compensate a totally disinterested stakeholder who has been, by reason of the possession of the fund, subjected to conflicting claims through no fault of its own. By its very nature it is a relatively small amount, simply to compensate for initiating the proceedings."); *Metropolitan Life Insurance Co. v. Enright*, 231 F.Supp. 275, 278 (S.D.Cal.1964) (where "plaintiff is more than a mere stakeholder, attorney fees are not allowable."); *Klebanoff v. Mutual Life Insurance Co.*, 246 F.Supp. 935, 950 (D.Conn.1965) (stakeholder was entitled to recover reasonable attorneys' fees and expenses strictly limited to those incurred initiating the interpleader proceedings, but fees incurred in dispute over the amount of interest and plaintiff's double indemnity claim were excluded); and *Aetna Insurance Co. v. Dickler*, 100 F.Supp. 875, 879 (S.D.N.Y.1951) (allowance of attorney fees may not encompass all services rendered where interpleading plaintiff was actually and deeply interested in the outcome).

 Reasonable attorneys' fees may be awarded for services directly attributable to the interpleader action. *Hartford Fire Insurance Co. v. Professional Men's Investment, Inc.*, 337 F.2d 1011, 1012 (3rd Cir.1964) (trial court did not abuse its discretion in awarding $1,000 in attorneys' fees to the stakeholder where the reasonable value of all services rendered was $6,000 including services valuable only to insurer); *In re OEM Industrial Corp.*, 135 B.R. 247, 248–49 (Bankr.W.D.Pa.1991) (interpleading party awarded $120 for a filing fee and $1,000 for

attorneys' fees which were necessary, itemized to show that they were related to the interpleader action, and small in proportion to the balance of the fund); *Mutual of Omaha Insurance Co. v. Walsh,* 395 F.Supp. 1219, 1225 (D.Mont.1975) (insurer was entitled to recover $1,000 for attorneys' fees and costs in the interpleader action from a $75,000 fund).

### B. *Application of Standard.*

█ National Union admits: "Attorneys' fees incurred in connection with this interpleader action are not necessarily accounted for separately from those which were incurred in connection with other legal services. National Union therefore cannot calculate the precise amount of attorneys' fees incurred in connection with this interpleader action." National Union's Application for Attorneys' Fees Incurred in Connection with D & O Interpleader Action at 1, *Technical Equities Corp. v. National Union Fire Insurance Co. (In re Technical Equities Corp.),* Ch. 11 Case No. 3–86–00366, Adv. No. 3–86–0449 (N.D.Cal. July 28, 1993). National Union treated this interpleader action as part and parcel of the litigation occurring in state court. It is not a disinterested interpleading party. For this reason alone, the court must deny the application in its entirety.

█ Additionally, the Fee Application should be denied because the fees requested are unreasonable. The court has found no published case involving a request greater than $12,500. It is clear from a review of the time records and upon consideration of the circumstances under which the interpleader action was filed, that a substantial portion the fees incurred related to matters other than a normal interpleader action. Given the lack of detailed time records, National Union has not met its burden of establishing that the $78,615.75 in fees requested are recoverable.

## IV. NATIONAL UNION IS ENTITLED TO OFFSET THE DEFENSE COSTS IT CAN PROPERLY ALLOCATE TO THE D. & O. POLICY AGAINST THE D. & O. INTERPLEADER FUND.

In *Helfand,* the court of appeal reversed the lower court's decision that the D. & O. Policy was not self-consuming: "Our analysis of this D & O policy uncovers no ambiguity concerning its 'self consuming' nature. The plain terms of the policy make it clear that defense costs [arising from claims] are payable against the limits of liability just like any other element of 'loss' as defined in the policy." *Helfand,* 13 Cal.Rptr.2d at 299. The court in *Helfand* simply held that costs required to be paid as an incident of defending against claims are elements of "loss" and reduce the policy's limits. It did not directly hold that defense costs take priority over claims. However, in the 1987 Order National Union was ordered to "advance reasonable defense expenses on a monthly basis to all former and present directors and officers of Technical Equities. . . ." The 1987 Order did not provide for payment to Claimants.

Requiring payment of defense costs as incurred in defending against policy claims was consistent with prevailing Ninth Circuit cases interpreting similar provisions. *See Gon v. First State Insurance Co.,* 871 F.2d 863, 868 (9th Cir.1989); *Okada v. MGIC Indemnity Corp.,* 823 F.2d 276, 282 (9th Cir.1987). The D. & O. Policy is a contract for the benefit of Technical Equities and its officers and directors. *Helfand,* 13 Cal.Rptr.2d at 310. That contract is between the insureds and National Union. Claimants are not parties to it. In a self-consuming policy, where the insureds choose to use the limits of the policy in defending themselves against claims, the policy limits are reduced.[14]

National Union states that it advanced defense costs of over $5 million as they were incurred pursuant to the terms of the 1987 Order. The plain meaning of *Helfand* re-

---

**14.** Consistent with the theory of unjust enrichment National Union will be allowed to calculate the interest due on the gross policy proceeds of $20,000,000 after accounting for its payments to third party law firms and/or attorneys for costs of defending directors and officers against claims made on the D. & O. Policy. Stated otherwise, as defense costs were paid from the policy proceeds the fund available was depleted and interest should be calculated based on that decreasing balance.

quires this court to deem National Union's liability reduced by the above amount if the costs were proper, that is, consistent with the 1987 Order and the terms of the D. & O. Policy.[15]

## V. DEFENSE COSTS ADVANCED BY NATIONAL UNION ARE SUBJECT TO REVIEW.

Having established that attorneys' fees properly allocated to the D. & O. Policy reduce National Union's liability limits, the following question arises: What amount of the $5.4 million in attorneys' fees sought by National Union is properly allocable to defending claims made against the D. & O. Policy? The 1987 Order provided that National Union was to file proof of payment of defense expenses with the bankruptcy court. Of the $5.4 million now claimed, National Union asserts that it expended $1.5 million in defense costs before entry of the 1987 Order. After entry of the 1987 Order and before the Superior Court decided in *Helfand* that the D. & O. Policy was not self-consuming, National Union filed proof of $845,096.70 in defense costs.

Claimants argue that because National Union failed to file proof of payment for defense costs beyond the $845,096.70, the balance of the defense costs should be disallowed. National Union replies that it discontinued filing proof of payment of defense expenses with the court because the trial court decided in *Helfand* that the D. & O. Policy was not self-consuming. National Union appealed that ruling and the court of appeal reversed as to the D. & O. Policy's "self-consuming" nature. Given this reversal, the court finds that National Union should have subsequently filed proof of defense cost payments. Notwithstanding what should have been done, National Union will not be penalized for its error which can be remedied by submitting detailed proof of payment of the costs expended in defending against D. & O. Policy claims at this time.

Claimants further object to the $1.7 million National Union asserts it expended for criminal defense costs. National Union counters that Claimants should not be given the opportunity to object to these defense costs because Claimants were aware that money was allocated for the criminal defense of the insureds at the time of expenditure. Just as National Union had no incentive to file proof of payment of defense expenses, Claimants had no incentive to object to the defense costs if the costs did not deplete the D. & O. Policy limits. The court notes that the appeal in *Helfand* was not decided until late 1992. A substantial amount of fees were incurred prior to that date. Accordingly, the court rejects National Union's argument. The initial information necessary for review of attorneys' fees is detailed in an order accompanying this Memorandum.

## VI. CONCLUSION.

National Union has not met its burden of establishing that the equities of this case require a departure from the standard rule that interest is awarded to prevent unjust enrichment. Interest will be computed based on the fifty-two week Treasury Bill rate adjusted and compounded quarterly, from August 1, 1986, the end of the second policy year, and on August 1, 1987, the end of the third policy year. Because National Union failed to account for the attorney fees incurred in bringing the interpleader action separately from fees incurred in asserting its own interests and it was not a disinterested party, the court will exercise its discretion and deny recovery of such fees. Thus, in accordance with this court's Order for Payment and Setting Special Status Conference, National Union is required to implead the proceeds of the D. & O. Policy into the court's registry with interest.

**15.** Claimants assert that according to *In re Ambassador Group, Inc. Litig.,* 738 F.Supp. 57 (E.D.N.Y.1990), claims take priority over the defense expenses advanced. In *Ambassador,* the district court held that under New York Law the claims of third parties for injuries were superior to the insureds' claims for legal fees. However, this case is neither binding nor persuasive because it was decided under New York state law and directly conflicts with the *Helfand* decision.