Alan C. GON; Jackie Yee; David Quan; Richard Tsang; Gilbert M. Nishimura; Ira M. Sako; Michael T. Ito; Morris Mark, Plaintiffs–Appellees,

v.

FIRST STATE INSURANCE COMPANY, Defendant–Appellant.

No. 88–2484.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 17, 1988.

Decided March 30, 1989.

Donald K. Fitzpatrick and Joan E. Havens, Mendes & Mount, Los Angeles, Cal., for defendant-appellant.

Phyllis E. Andelin and William Goodman, San Francisco, Cal., for plaintiffs-appellees.

Before PREGERSON, CANBY and BEEZER, Circuit Judges.

CANBY, Circuit Judge:

First State Insurance Company appeals an order of the district court requiring it to pay all legal expenses of the insureds as they are incurred, without contemporaneous apportionment, in ongoing litigation with the Federal Savings and Loan Insurance Company. We affirm.

## FACTS AND PROCEEDINGS BELOW

In September 1983, First State Insurance Company issued a Directors and Officers liability policy to Gateway Savings and Loan. The appellees are the officers and directors of Gateway insured under that policy.

On April 14, 1986, the Federal Home Loan Bank Board determined that Gateway Savings and Loan was insolvent and appointed the Federal Savings and Loan Insurance Company (FSLIC) as the conservator of Gateway. On May 4, 1987, FSLIC filed suit against the former officers and directors of Gateway, alleging they had engaged in unsafe, unsound, and imprudent banking practices, which caused Gateway's losses.

In May 1987, Gon and the other former officers and directors of Gateway tendered their defense in the FSLIC action to First State. First State responded that it had no duty to defend or to pay legal expenses as they were incurred, and that several of the claims in the FSLIC complaint were probably excluded under the terms of the policy. First State subsequently notified the insureds that it was rescinding the insurance contract because it believed that misrepresentations were made in the original application for insurance. In August 1987, First State filed a complaint for rescission in state court. That case was removed to federal court. The insureds then filed this action in federal court against First State, seeking declaratory and injunctive relief,

and damages arising from First State's refusal to defend or otherwise acknowledge its duties under the contract. The two actions were then assigned to the same district judge as related cases. The judge elected to proceed with the case brought by the insureds, and to hold the rescission action in abeyance.

On the insureds' motion for summary judgment, the district court held that the policy required First State to pay legal expenses as they were incurred, and that California insurance law imposed upon First State a duty to defend the insureds in the FSLIC action. This order, filed November 23, 1987, required First State to pay the insureds' legal expenses as they were incurred.

At First State's request, the district court issued a clarification order on December 15, 1987, holding that First State did not have to pay defense costs for claims that the FSLIC complaint "clearly reveals to be based entirely on allegations of conduct not covered by the policy." It also held that First State was not required "to pay the defense costs of non-insured persons." The court further ordered the parties to work out an equitable apportionment formula for excluding expenses of defending claims and persons not covered by the policy.

The parties failed to agree on the apportionment of defense costs. The district court issued an order on March 16, 1988, further clarifying the original order of November and the subsequent December order. In it, the court ordered First State to pay all legal expenses of all insureds as they are incurred, without contemporaneous apportionment, because distinguishing potentially covered claims from uncovered claims was not practicable and would defeat the purpose of the insurance company's duty to defend. Similarly, the court ordered that First State pay the legal expenses of certain of the insureds that it contends are not covered by the policy by

reason of their not acting in their capacity as officers and directors of Gateway. First State reserved the right, the court held, to recover defense costs clearly attributable to uncovered claims or uncovered individuals after judgment in the FSLIC action.

First State now appeals this order. First State challenges the district court's holding that First State has a duty to defend the insureds and pay legal expenses as incurred. It also contests the denial of its request for contemporaneous apportionment of the legal expenses. The insureds, in addition to opposing First State on the merits, assert that we lack jurisdiction over the appeal, or at least over some of the issues presented by First State. We address the latter, threshold issues before turning to the merits.

## DISCUSSION

### A. JURISDICTION

#### 1. *Appealability of the Order of March 16, 1988.*

We have jurisdiction to review an order "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions" under 28 U.S.C. § 1292(a)(1). Appellee Quan contends that the district court's order of March 16, 1988, qualifies neither as an injunction, nor as an order modifying an injunction. He therefore concludes that the order is unappealable for lack of finality. We disagree.

 An injunction may be defined as an order that is directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than temporary [1] fashion. 16 C. Wright, A. Miller, E. Cooper, & E. Gressman, *Federal Practice & Procedure: Jurisdiction* § 3922 at 29 (1977). It is to be contrasted with an order by a court that regulates the conduct of the litigation, which is not considered an injunction for purposes of appellate jurisdiction, even though punishable by

---

1. The cited source, *Federal Practice and Procedure,* states that the order must accord the relief "in more than preliminary fashion." We think "temporary" is a more felicitous word. Tempo-

rary restraining orders are not appealable, while preliminary injunctions are. *Id.,* § 3922 at 31–35.

contempt. Orders relating to discovery are examples of the latter. *See id.* at 30 (and cases cited within).

 The original order of November 23, 1987, directed First State to pay defense expenses in the FSLIC litigation as they were incurred. The order met the general definition of an injunction in that it was directed to First State, was enforceable by contempt, and provided most of the substantive relief the insureds sought. It did not concern only the conduct of the litigation, as Quan contends. The order of December 15, 1987, clearly modified the original order by directing that expenses be apportioned so that First State need only pay covered expenses as they were incurred. Finally, the order of March 16, 1988, from which this appeal was taken, again modified the original injunction by providing that First State pay all defense expenses, subject to later reimbursement after a post-trial apportionment. Having concluded that the original order was an injunction, we have no difficulty characterizing the March 16th order as a modification of that injunction. The March 16th order substantially changed the terms and force of the injunction as it stood immediately prior to March 16; the change was a modification, not a mere clarification. *See Movie Systems, Inc. v. MAD Minneapolis Audio Distributors,* 717 F.2d 427, 429–30 (8th Cir.1983). It is therefore appealable under 28 U.S.C. § 1292(a)(1).

### 2. Issues Raised by Appeal Only of the March 16 Order Modifying the Injunction.

The original injunction ordering First State to pay defense expenses as they were incurred was entered on November 23, 1987. First State did not appeal that injunction, but did request clarification on December 11, 1987. The district court responded with an order of clarification on December 15, 1987, which modified the injunction by providing that First State was entitled to apportion defense costs and not pay those that were clearly excluded by the policy or that related to non-covered individuals. First State did not appeal that order. Then, on March 16, 1988, after the parties could not agree on an apportionment formula, the district court entered its order requiring First State to pay all defense costs as incurred, subject to apportionment after judgment in the FSLIC trial. From this order, First State took a timely appeal.

The insureds argue that, because First State did not appeal the earlier orders, it is precluded from attacking the ruling, embodied in the first order, that First State must pay potentially covered defense expenses as they are incurred. The insureds contend that the only issue properly before us is the modification made by the March 16th order: the ruling that First State must wait until after trial to apportion covered and uncovered defense expenses. While there is something to be said on both sides of this argument, we conclude that First State's appeal is not so narrowly confined as the insureds would have it.

 It is true that a party that has failed to appeal from an injunction cannot regain its lost opportunity simply by making a motion to modify or dissolve the injunction, having the motion denied, and appealing the denial. In such a case, the appeal is limited to the propriety of the denial, and does not extend to the propriety of the original injunction itself. *Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1418 n. 4 (9th Cir.1984). *See also Denley v. Shearson/American Express, Inc.,* 733 F.2d 39, 42–43 (6th Cir.1984). As a result, review of denials of motions to modify or dissolve injunctions are generally limited to the "new matter" presented by the motion. *Sierra,* 739 F.2d at 1418 n. 4.

 A somewhat more delicate question is presented when a motion to modify an injunction is granted. It is still true that one who has long since foregone a right to appeal an injunction ought not to regain it simply because a separable modification, appealable in its own right, has occurred. On the other hand, a modification may be so fundamental to the original injunction, or may otherwise present issues so inextricable from the validity of the original injunction, that review must include the

whole package. Indeed, even denials of motions to modify can present such problems of entanglement, and the appellate court may decide to review the original injunction "when it perceives a substantial abuse of discretion or when the new issues raised on reconsideration are inextricably intertwined with the merits of the underlying order." *Sierra,* 739 F.2d at 1418 n. 4; *see Cerro Metal Products v. Marshall,* 620 F.2d 964, 972 (3d Cir.1980). In order to determine whether review of the original injunction is justified in the case before us, we must turn to its particular facts and exercise a pragmatic judgment. *See Fern v. Thorp Public School,* 532 F.2d 1120, 1129 (7th Cir.1976).

The facts here, and the manner in which the issues are framed, lead us to conclude that we must review the major earlier rulings of the district court in order properly to decide the validity of the last modification of March 16th. First State's original position was that its policy was one of indemnification and contained no duty to defend, and that accordingly it need pay no expenses of defense until after final judgment in the FSLIC trial. The district court firmly rejected that position in its order of November 23, 1987, holding that the policy required contemporaneous payments of covered defense expenses as they were incurred, and that California law imposed a duty to defend. The court's actual order, however, did not impose a duty to defend; it simply required payment of defense expenses as they were incurred. Before the time for appeal of that ruling expired, First State obtained a clarification that permitted it to apportion expenses, and not to pay those that fell within clear policy exclusions or that were incurred by non-covered persons. It was only after negotiations over an apportionment formula broke down that the district court issued its March 16th order requiring First State to pay all defense expenses, subject to apportionment only after final judgment.

Now, in attacking the March 16th order on appeal, First State argues that a requirement that *all* expenses be paid prior to judgment is improper, even for a policy requiring payment of legal expenses as they are incurred, unless the policy embodies a duty of the insurer to defend—a duty that First State emphatically denies. Whether or not this argument proves to be meritorious, it is almost impossible to address it without examining the merits of the district court's earlier rulings. And it is unreasonable to hold the question of a duty to defend foreclosed by First State's failure to appeal the November 23rd order. At the time that order was issued, and after it was clarified on December 15th, the presence or absence of a duty to defend had no effect on the timing of apportionment. It is a close question whether First State should be foreclosed from challenging its duty to pay at least *covered* defense expenses as they are incurred, but the nature and extent of its duties in that regard similarly may affect the question whether the district court abused its discretion in ordering *all* expenses to be paid when incurred, subject to later apportionment. Thus the "new issues raised on reconsideration are inextricably intertwined with the merits of the underlying order." *Sierra,* 739 F.2d at 1418 n. 4. We conclude, therefore, that First State, in this appeal of the March 16th modification, may dispute the earlier rulings of the district court relating to the existence of a duty to defend, and the existence and scope of the duty to pay defense expenses as they are incurred. Whether any of these points is determinative is a matter for the merits, which we address below; our ruling at this point is simply that the arguments may properly be raised by First State.

## B. THE DUTY TO DEFEND AND APPORTIONMENT OF LEGAL EXPENSES

### 1. *Duty to Defend v. Duty to Pay Legal Expenses*

■ First State contends that a requirement of payment of all legal costs as incurred amounts to the imposition of a duty to defend. The district court did, in the first order, conclude that First State had a duty to defend. We disagree with that conclusion, and believe there is no duty to defend under the terms of the First State

policy. There is no language in the policy stating that First State will defend any claims. A policy with a duty to defend typically contains a clause that provides that the insurer chooses the attorney and controls the strategy of the litigation, a valuable right to protect the insurer's own interests. This clause is not present in the First State policy. Instead, the First State policy covers legal expenses as a loss item. Directors and officers liability policies generally do not contain a duty to defend. *See* Comment, *Practical Aspects of Directors' and Officers' Liability Insurance—Allocating and Advancing Legal Fees and the Duty to Defend,* 32 UCLA L.Rev. 690, 701–12 (1985).

■ The absence of a duty to defend, however, is crucial neither to the district court's decision nor to ours. The obligation actually enforced by the district court's decision was a duty, under the policy, to pay defense expenses as incurred. That ruling is clearly supportable, and we agree with it.

In *Okada v. MGIC Indem. Corp.,* 823 F.2d 276 (9th Cir.1986), we concluded that a policy with pertinent language identical to First State's required payment of legal expenses as incurred. Because the policy provided coverage for loss that the insureds became legally obligated to pay, rather than loss paid out by the insureds, it was a liability policy.[2] *Id.* at 280. The insurer was required to pay legal expenses as they were incurred by the directors, because that is when the directors were legally obligated to pay. *Id.*

The language of this policy is parallel, and *Okada* controls. The insuring agreement under the "Directors and Officers Liability" portion of the policy provides that First State will pay 95% of all loss which the insureds shall become *"legally obligated"* to pay. (Emphasis added). Loss is defined to include "damages, judgments, settlement and costs, cost of investigation ... and defense of legal actions, claims or proceedings and appeals there-

from...." This language alone supports the district court's ruling that First State must pay legal expenses as they are incurred, because an insured becomes legally obligated to pay legal expenses as soon as the services are rendered. *Okada,* 823 F.2d at 280. This case is easier than *Okada,* however, because the policy in *Okada* also had a provision which sought to exclude legal expenses from expenses that were to be paid as incurred. There is no such provision in the First State policy. As a result, we agree that First State, under the terms of the policy, had a duty to pay legal expenses as they are incurred.

### 2. *Apportionment of Legal Expenses*

■ The final issue is whether the district court can require payment of all legal expenses as incurred, where, as here, the policy does not include a duty to defend, but only a duty to pay legal expenses. The district court found that First State was entitled to apportion the legal expenses, but that, under the facts of this case, it was impractical to do so before judgment. Here, again, we agree with the district court. Although First State is entitled to apportion the expenses between covered and uncovered claims and persons, it cannot do so at the expense of the insured.

In *Okada,* we favored apportionment early in the underlying suit. We found that some exclusions, such as libel or slander, are easy to distinguish from covered claims by analyzing the underlying complaint. *Okada,* 823 F.2d at 282. But where the nature of the claims made in the complaint do not clearly indicate whether they would be covered or uncovered, the apportionment issue is much more difficult. Where, for example, the defense of a claim based on an alleged act would be covered under the policy if the act were committed negligently, but would not be covered if it were committed intentionally, apportionment in advance would be very difficult, if not impossible.

**2.** The policy defined "Loss" as "the amount which the Directors and Officers are legally obligated to pay ... for a claim or claims made against the Directors and Officers for Wrongful Acts." *Okada,* 823 F.2d at 280.

A review of the FSLIC complaint confirms the district court's finding that apportioning legal expenses based on the claims made in the complaint would not be feasible. Although some of the FSLIC's claims may well include personal advantage and dishonesty, which are excluded claims, they will also include neglect, mismanagement, breach of duty, omissions, and errors and misstatements, which are covered under the policy.

Two policy reasons also support our holding. First, the third party complainant, who may overstate the claims against the insured, should not be the arbiter of the policy's coverage. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 419 P.2d 168, 176–77, 54 Cal.Rptr. 104, 112–13 (1966). Second, apportioning legal expenses where coverage is not yet clear, because the facts are not fully developed, may deny the insureds the benefits of the protection they purchased.

We are not, however, unconcerned with First State's predicament. First State may be advancing legal fees that it will have great difficulty in recovering should the court subsequently decide that a claim or individual was not covered by the policy. The district court may well wish to consider the use of a master or other case management techniques to monitor the legal fees in order to keep track of those which are attributable to covered and uncovered matters, and to permit an earlier apportionment if it should develop that some portions of the incurred expenses prove to be uncovered and easily separable, without prejudice to the defense of covered claims.

## CONCLUSION

We agree with the district court that apportionment between covered and uncovered claims and persons is not yet feasible under the facts of this case. We affirm the district court's order that First State must pay all legal expenses as incurred, subject to apportionment and reimbursement for defense of uncovered claims or persons af-

ter settlement or judgment in the underlying FSLIC action.

AFFIRMED.