**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0068n.06
Filed: January 26, 2007

**No. 06-1278**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MARYANN K. BRUDER,

      **Plaintiff-Appellee,**

v.

ERIC SMITH, Individually, and in his capacity
as Macomb County Prosecutor, and MACOMB
COUNTY, Jointly and Severally,

      **Defendants-Appellants.**

                                /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

**BEFORE:**    **CLAY, ROGERS, and SUTTON, Circuit Judges.**

      **CLAY, Circuit Judge.** Defendants Eric Smith and Macomb County bring this interlocutory appeal from the grant of a preliminary injunction in favor of Plaintiff Maryann K. Bruder. Prior to this litigation, on October 27, 2005, Defendants terminated Plaintiff from her position as an Assistant Prosecuting Attorney II ("APA") for Macomb County. Plaintiff filed the instant lawsuit, alleging that her termination was effectuated in violation of her right to due process under the Fifth and Fourteenth Amendments. The district court granted Plaintiff's motion for a preliminary injunction, which had the effect of reinstating Plaintiff to her position as an APA, along with providing her backpay calculated from the date of her termination. Subsequent to the district court's grant of

injunctive relief but prior to this appeal, Defendants provided Plaintiff with what no party disputes is adequate due process of law, and again concluded that Plaintiff's termination was justified and terminated her. Because these actions have rendered this controversy moot insofar as it pertains to the preliminary injunction, which is the only issue presently before us, we lack jurisdiction to adjudicate this appeal. We therefore **DISMISS** the appeal as moot and **REMAND** to the district court for further proceedings.

## I.

Plaintiff began working at her job as an APA in Macomb County, Michigan, on July 8, 2002. She was working in the domestic violence unit at the time of her termination. This case stems from a case that Plaintiff was prosecuting, *People v. Baumer*, the trial for which was scheduled to commence in the Macomb Circuit Court in September 2005. *Baumer* was a prosecution for child abuse against the child's aunt; the child's mother was a key witness, but her attendance at the trial was uncertain due to the fact that the mother was an alleged drug addict. On September 13, 2005, Plaintiff sought and obtained the verbal agreement of a judge and the defense attorney to issue a "material witness warrant," which allows the court to issue a warrant for a witness in a criminal trial

when there is a danger of the loss of the witness' testimony.[1] However, the warrant was never signed or executed, because Plaintiff's supervisor, James Langtry, instructed her not to obtain the warrant.

During the investigation, Plaintiff had been working closely with Detective Sergeant John Rollo, and Langtry ordered Plaintiff to call Rollo and instruct him not to arrest the witness. At this point the parties' stories diverge. Plaintiff claims that she called Rollo and specifically instructed him not to make the arrest. Defendants allege that, to the contrary, Plaintiff instructed Rollo to arrest the witness, explaining that she was not allowed to get the material witness warrant, but if the witness were in custody, then the warrant could be issued. What is not disputed is that Rollo assembled a team of individuals and arrested the witness on the evening after Plaintiff had been instructed not to obtain the warrant. That night, which was Wednesday, after hours, Plaintiff received a call from Rollo, advising her that the witness had been picked up on a misdemeanor warrant. Rollo stated that he would not be able to hold the witness long, so Plaintiff should expeditiously consult her supervisors about getting the material witness warrant signed. Plaintiff had

---

[1] *See* Mich. Comp. Laws § 737.35:

> When it appears to a court of record that a person is a material witness in a criminal case pending in a court in the county and that there is a danger of the loss of testimony of the witness unless the witness furnishes bail or is committed if he or she fails to furnish bail, the court shall require the witness to be brought before the court. After giving the witness an opportunity to be heard, if it appears that the witness is a material witness and that there is a danger of the loss of his or her testimony unless the witness furnishes bail or is committed, the court may require the witness to enter into a recognizance with a surety in an amount determined by the court for the appearance of the witness at an examination or trial. If the witness fails to recognize, he or she shall be committed to jail by the court, until he or she does recognize or is discharged by order of the court.

received a note from Langtry stating that he would be gone on Thursday and Friday and informing her whom she could speak with about the warrant. The note also stated "DO NOT ISSUE [the warrant] W/O TALKING TO ONE OF US!" J.A. at 575. Allegedly because of this note, Plaintiff approached one of her other supervisors, Robert Merrelli, the following morning and inquired about getting the material witness warrant issued. After lunch, Merrelli told Plaintiff that she could not use the material witness warrant to hold the witness. The witness was thereafter released.

On September 28, 2005, a detective at the Macomb County Sheriff's Office sent a letter to Assistant Prosecutor Therese Tobin stating that Plaintiff's actions "compromised the integrity" of the sheriff's office by misinforming Rollo to the effect that a warrant would be authorized for a material witness. J.A. at 588. According to the letter, Plaintiff "jeopardized the safety of the officers" by unnecessarily sending them into "the undesirable 8-Mile area" of Detroit, Michigan. J.A. at 587.

Plaintiff was first informed that there was a problem with the *Baumer* prosecution on October 3, 2005. On that day, Plaintiff received a letter from Benjamin Liston. The letter informed Plaintiff that the county was "conducting an investigation regarding allegations that you inappropriately subjected a witness to arrest." J.A. at 576. The letter placed Plaintiff on administrative leave starting immediately, and informed her that the county was considering disciplinary action. It also informed her that a "*Loudermill* hearing" was scheduled for October 6, 2005.[2]

---

[2] *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (providing public employees a constitutional right to pre-termination due process).

The "*Loudermill* hearing" was held on October 5, 2005. The meeting lasted approximately one and a half hours. Prior to the meeting, Plaintiff was informed that if she answered untruthfully, she would be terminated. At the meeting, Plaintiff was asked a series of questions about her interactions with Rollo and about how it was that the *Baumer* witness came to be arrested. Although Plaintiff was given the opportunity to answer the questions posed to her, she was not provided an opportunity to present any information of her own.

Following the meeting of October 5, 2005, the parties attempted to negotiate a settlement. The negotiations were not fruitful, in part because Plaintiff maintained that she had not acted improperly in connection with the *Baumer* prosecution. In connection with these negotiations, Plaintiff received a document entitled "Preliminary Statement of Charges" on October 19, 2005. J.A. at 578. This document outlined the charges against Plaintiff, and proposed a settlement.

On October 27, 2005, Defendant Smith sent Plaintiff a letter terminating her employment for her "actions and tactics in the matter of *People v. Baumer*," which "were insubordinate," "created a breach of trust between [Defendant Smith's] office and law enforcement agencies," and "interfered with the efficient operation of [Defendant Smith's] office's prosecutorial mission." J.A. at 581. On the same day, Plaintiff's union representative sent Defendant Smith a letter requesting a hearing as provided in the collective bargaining agreement governing Plaintiff's employment (the "CBA"). Defendant denied this request as untimely on October 31, 2005, taking the position that the Preliminary Statement of Charges provided to Plaintiff on October 19, 2005 was the date by which the timeliness of a hearing request should be computed.

Litigation followed these events. Plaintiff filed a complaint on November 29, 2005, alleging a violation of procedural due process under 42 U.S.C. § 1983, and two other claims related to this alleged violation. On the same day, Plaintiff moved for a preliminary injunction restraining Defendants from taking efforts to fill Plaintiff's position, ordering Defendants to reinstate Plaintiff with backpay, and ordering Defendants to comply with the parties' CBA. On December 22, the district court granted in part Plaintiff's motion for a preliminary injunction, ordering that Plaintiff be allowed to return to work with backpay. Defendants filed a timely interlocutory appeal from this injunction on January 23, 2006.

Subsequent to these events, Defendant Macomb County provided Plaintiff a second *Loudermill* hearing with all the procedural attributes outlined in the CBA. At the conclusion of the hearing, the body conducting the hearing decided that Plaintiff's termination was justified, and Plaintiff was again terminated. Plaintiff challenged this procedure by an arbitration that she requested pursuant to the CBA. This arbitration remains pending as of the time of this appeal. According to the CBA, the Arbitrator's disposition is final and binding, but is limited to "ascertaining whether [Defendants'] decision to discipline was arbitrary, capricious or discriminatory or otherwise not in accordance with the law or the provisions set forth in [the CBA]." J.A. at 42.

**II.**

Because Defendants have fully complied with the preliminary injunction and ceased their efforts to terminate Plaintiff without due process of law, this case is moot insofar as it concerns the preliminary injunction. The parties cannot waive the issue of mootness because it is "clear . . . that 'mootness is a threshold jurisdictional issue.'" *Brock v. Int'l Union, United Auto., Aerospace &*

*Agric. Implement Workers of Am.*, 889 F.2d 685, 687 n.1 (6th Cir. 1989) (citing *WJW-TV, Inc. v. City of Cleaveland*, 878 F.2d 906, 909 (6th Cir. 1989) (per curiam)); *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (mootness implicates Article III case or controversy requirement). "A case becomes moot only when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 530-31 (6th Cir. 2001) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Where a preliminary injunction is separately challenged, the issue of whether a preliminary injunction is moot is a distinct issue from the issue of whether the case as a whole is moot. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 393 (1981); *see Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121 (1974).

In this case, it is clear that the alleged violation of procedural due process cannot be expected to recur. Since the district court granted the preliminary injunction, Plaintiff was provided with a hearing pursuant to the CBA. The CBA provides for a hearing before a Hearing Board that consists of seven of Plaintiff's fellow prosecutors, chosen by lot. Before the hearing, an affected prosecutor must be provided with notice consisting of "a specific statement of the reasons for imposing the discipline and the specific nature of the discipline intended." J.A. at 40. Moreover, the affected APA is ensured the right to testify. While we express no opinion on whether these procedures are *necessary* to comply with *Loudermill*, 470 U.S. at 546, we note that these procedures likely satisfy the requirements of *Loudermill*, and no party argues otherwise. After the hearing, Plaintiff was again terminated, and the propriety of this decision has been submitted to arbitration. If the arbitrator rules

against Plaintiff, there is no reasonable possibility that Defendants could again terminate her without due process. However, even if the arbitrator finds that Defendants acted in an arbitrary and capricious manner, a decision within his or her power under the arbitration agreement, Plaintiff would have still been provided with the core *Loudermill* due process requirements–notice of the charges against her and an opportunity to explain herself–regardless of any actions the Defendants take subsequent to the arbitrator's decision. There is therefore no reasonable probability that the alleged violation of procedural due process is likely to recur.

Because the only matter before this Court is an interlocutory appeal from a preliminary injunction, the case is moot unless some aspect of the *preliminary* relief "'would, if granted, make a difference to the legal interests of the parties.'" *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting *Crane v. Indiana High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992)); *see also Univ. of Tex. v. Camenisch*, 451 U.S. at 394. Here, the preliminary injunction has no continuing legal effect. Plaintiff's motion for a preliminary injunction, to the extent that it was granted, requested that she be "reinstate[d] . . . to her position as an APA II with back pay *until Defendants provide the Plaintiff with due procedural due process*." J.A. at 144 (emphasis added). Since this condition has occurred, affirming or reversing the preliminary injunction would not affect the legal interests of the parties.

Defendants argue that this case should not be dismissed as moot. First, Defendants argue that this case is not moot because it involves an action that is "capable of repetition yet evading review." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 n.4 (6th Cir. 2001) (internal quotation marks omitted). However, this exception to the mootness doctrine only applies where there is a reasonable

expectation of the recurrence of the wrong with respect to the same complaining party. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). As the merits of this case (which are still being litigated) raise the issue of whether Defendants' original termination of Plaintiff violated due process, and as Defendants have already provided Plaintiff with due process with respect to the issue addressed by the preliminary injunction, (i.e., they complied with due process in terminating Plaintiff after her reinstatement), there is no "demonstrated probability" or "reasonable expectation" that Plaintiff will again be terminated without being afforded the constitutional procedure that she was due. *See id.* Defendants also rely on *McPherson*, but that case is clearly distinguishable because *McPherson* involved lingering effects from a preliminary injunction. 119 F.3d at 458-59. *McPherson* concerned a preliminary injunction that required that McPherson be allowed to compete during the 1995 basketball season. *Id.* at 458. Even though the season was over at the time of the appeal, if the injunction were reversed, McPherson's team could have been forced to retroactively forfeit basketball games. *Id.* Here, neither party has identified any legal outcome that hinges on the preliminary injunction, and we likewise cannot discern one. Lastly, Defendants rely on *Cleveland Branch NAACP*, 263 F.3d at 530-31. This case is inapposite, because it involved a grant of summary judgment, not a grant of preliminary relief. *Id.*

The district court's grant of a preliminary injunction, although resting in part on the likelihood of success on the merits, did not adjudicate the merits of this controversy. *See Camenisch*, 451 U.S. at 394-96. Plaintiff has a continuing action for, *inter alia*, money damages and attorney's fees under 42 U.S.C. § 1983 for the same alleged constitutional violation that formed the basis of the preliminary injunction. This litigation, if pursued by the parties, will produce a final decision

on the merits.[3]  These issues are very much live; the issue of preliminary relief, however, no longer would "make a difference to the legal interests of the parties." *McPherson*, 119 F.3d at 458 (internal quotation marks omitted).  We therefore hold that this appeal is moot.

## CONCLUSION

For the reasons stated herein, we **DISMISS** the appeal as moot, and **REMAND** the case to the district court for further proceedings.

---

[3] Defendants claim that it is their understanding that "they will not be able to raise [the merits of Plaintiff's claim for damages] in an appeal from a final judgment at the end of this case, as the injunction is independently appealable." Def. Br. at 40. (citing *Gon v. First State Ins.*, 871 F.2d 863 (9th Cir. 1989)).  This assertion is incorrect.  *Gon* concerned the appealability of a modification to a preliminary injunction in the event that the original preliminary injunction had not been appealed. *Id.* at 866.  Nothing in *Gon* would prevent a final decision from the district court from being appealable under 28 U.S.C. § 1291.