**JEFF TRACY, INC., etc., Plaintiffs,**

v.

**U.S. SPECIALTY INSURANCE COMPANY, etc., Defendants.**

**No. SA CV 08–361 AHS (RNBx).**

United States District Court, C.D. California, Southern Division.

May 5, 2009.

Eric R. Little, Mary Catherine Reid, Little Reid & Karzai LLP, Irvine, CA, for Plaintiffs.

David F. Abernethy, Drinker Biddle and Reath LLP, Philadelphia, PA, Suzanne V. Stouder, William A. Hanssen, Drinker Biddle and Reath LLP, Los Angeles, CA, for Defendants.

ORDER (1) GRANTING DEFEN-DANT'S MOTION FOR JUDG-MENT ON THE PLEADINGS, AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDG-MENT OR, IN THE ALTERNA-TIVE PARTIAL SUMMARY JUDG-MENT

ALICEMARIE H. STOTLER, District Judge.

## I.

### *INTRODUCTION*

Plaintiff Jeff Tracy, Inc., d/b/a Land Forms Landscape Construction ("Jeff Tracy"), is the insured on a directors, officers and organization liability insurance policy (the "D & O Policy") issued by defendant U.S. Specialty Insurance Company ("USSIC"). During the policy period, Jeff Tracy employees brought a putative class action against the company, *Fortino Alvarado Osorio, et al. v. Jeff Tracy, Inc., etc.*, Case No. 07CC05683 (Orange County Super. Ct. filed May 7, 2007) (the "Osorio Action"), alleging, *inter alia*, that Jeff Tracy failed to pay the prevailing wage on certain public works projects, failed to inform employees of their classification under California wage law, and made misstatements about how workers would be paid. Shortly thereafter, the California Department of Industrial Relations, Division of Labor Standards Enforcement ("DLSE") issued civil wage assessments against Jeff Tracy based, in part, on the public works projects at issue in the Osorio Action. After USSIC refused Jeff Tracy's demands for coverage, Jeff Tracy brought this action for breach of contract and declaratory relief. Jeff Tracy contends that USSIC is liable for costs of settling the Osorio Action and the DLSE assessments as a result of its alleged breach of the D & O Policy.

The parties seek pretrial resolution of the coverage dispute, Jeff Tracy by way of a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, and USSIC by way of a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court concludes that the policy issued by USSIC does not cover the demands Jeff Tracy makes, and USSIC is entitled to judgment on the pleadings.

## II.

### *SUMMARY OF THE COMPLAINT*

#### A. The D & O Policy

The parties executed the D & O Policy in mid-to-late 2006. The D & O Policy covers the period from September 5, 2006, through June 25, 2007, and contains a lia-

bility limit of $1 million, including Defense Costs, as defined in the policy. (*See* Compl. ¶ 7; Ex. 1 at 18.) Subject to certain terms and conditions, the D & O Policy provides coverage for "**Loss**" arising from "**Claims**" made against the "**Insured Organization**" or "**Insured Persons**" for "**Wrongful Acts.**" (Compl., Ex. 1 at 34.) Of relevance here, the D & O Policy includes the following definitions:

(B) **Claim** means:

. . . .

(2) any civil proceeding commenced by service of a complaint or similar pleading

. . . .

(4) any administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document

. . . .

(C) **Defense Costs** means reasonable legal fees, costs and expenses consented to by the Insurer . . . resulting from the investigation, adjustment, defense or appeal of a **Claim** against an **Insured,** but excluding salaries, wages, benefits or overhead expenses of any **Insured Person.**

. . . .

(E) **Employee** means any individual whom the **Insured Organization** compensates by salary, wages and/or commissions and whose labor or service is engaged by and directed by the **Insured Organization,** including seasonal, volunteer, and part-time employees.

. . . .

(G) **Insured** means the **Insured Persons** and the **Insured Organization.**

. . . .

(I) **Insured Person** means any past, present or future director, officer, managing member, manager or **Employee** of the **Insured Organization,** including any person in a position which is the functional equivalent thereof with respect to any entity included within the definition of **Insured Organization** located outside the United States.

(J) **Loss** means **Defense Costs** and any damages, settlements, judgments, back pay awards and front pay awards or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damages award, if and where insurable by law) that an **Insured** is legally obligated to pay as a result of any **Claim;** provided that **Loss** will not include (1) wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed. . . .

. . . .

(U) **Wrongful Act** means:

(1) any **Employment Practices Wrongful Act**

(a) by the **Insured Organization,** or (b) by an **Insured Person** in his or her capacity as a director, officer, member, manager, or **Employee** of the **Insured Organization;**

(2) any other actual or alleged act, error, misstatement, misleading statement, omission or breach of duty (a) by the **Insured Organization,** or (b) by an **Insured Person** in his or her capacity as a director, officer, member, manager or **Employee** of the **Insured Organization** or in an Outside Capacity; or

(3) any matter claimed against an **Insured Person** solely by reason of his or her service (a) as a director, officer, member, manager or **Employee** of the **Insured Organization,** or (b) in an **Outside Capacity.**

(Compl. ¶ 7, Ex. 1 at 34–36, 38.)

The D & O Policy also excluded from coverage any "**Claim**":

(F) brought by or on behalf of, or in the name or right of, the **Insured Organiza-**

tion, whether directly or derivatively, or any **Insured Person,** unless such **Claim** is:

(1) brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Insured Organization** or any **Insured Person,**

(2) brought or maintained by an **Insured Person** for contribution or indemnity and directly results from another **Claim** covered under this Policy, or

(3) for an actual or alleged **Employment Practices Wrongful Act;**

. . . .

(L) for any actual or alleged violation of any provision of the Fair Labor Standards Act other than the Equal Pay Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, and workers' compensation, unemployment insurance, social security or disability benefits law or any amendments thereto, or any other similar provisions of any federal, state or local statutory or common law or any rules and regulations promulgated under any of the foregoing . . . .

(Compl. ¶ 7, Ex. 1 at 39–40.)

## B. The Osorio Action and DLSE Assessments

On May 7, 2007, three Jeff Tracy employees filed the Osorio Action in Orange County Superior Court. (Compl.¶ 8, Ex. 2.) The Osorio Action plaintiffs asserted five claims against the company: (1) violation of statutory duty for breach of the California Labor Code; (2) breach of contract; (3) penalties under the California Labor Code; (4) recovery of a payment bond executed under the California Civil Code; and (5) unfair business practices under California Business and Professions Code § 17200. (Compl., Ex. 2 at 54.) According to the complaint's allegations, Jeff Tracy failed to pay its employees the prevailing wage rate on various public construction projects pursuant to California Labor Code §§ 1771, 1774, and 1194. (Compl. ¶ 38, Ex. 2 at 58–59.)

On July 6, 2007, the DLSE issued Civil Wage and Penalty Assessments against Jeff Tracy in connection with work performed on the Sierra Lakes Project. (Compl.¶ 9, Ex. 3.) On October 19, 2007, the DLSE issued additional Civil Wage and Penalty Assessments against Jeff Tracy in connection with the Lytle Creek Road Roadway Project ("Lytle Creek Project") and the Patricia Marrujo Park Project ("Marrujo Project"), which were subsequently amended by the DLSE on November 5, 2007, and November 2, 2007, respectively. (Compl.¶¶ 10–12, Exs.4–5.) The assessments issued for the Sierra Lakes and Lytle Creek projects were related to the plaintiffs' claims in the Osorio Action. (Compl.¶¶ 9–11.)

## C. The Parties' Coverage Dispute

Shortly after the Osorio Action was filed, Jeff Tracy tendered its defense to USSIC. (Compl.¶ 13.) USSIC denied coverage by letter dated June 12, 2007, stating that the Osorio Action did not constitute a Loss under the policy and Exclusions J, F, and L barred coverage. (Compl.¶¶ 14, 21, Ex. 9.) On July 12 and July 27, 2007, Jeff Tracy notified USSIC of the DLSE assessments relating to the Sierra Lakes Project. (Compl.¶¶ 15–16, Exs.10–11.) By letter dated August 6, 2007, USSIC again denied coverage, citing Exclusion L and the D & O Policy's definition of Loss. (Compl.¶ 18, Ex. 13.) Jeff Tracy sent notice of the Lytle Creek Project and Marrujo Project assessments in late September or early October of 2007, but, once again, USSIC denied coverage

for the reasons set forth in the August 6 letter. (Compl.¶¶ 19–20, Exs.16–19.)

Between November 2007 and January 2008, the parties exchanged letters concerning the proper scope of coverage under the D & O Policy. (*See* Compl. ¶¶ 24–30.) Despite Jeff Tracy's efforts to persuade USSIC that the Osorio Action and various DLSE assessments came with the terms of the policy, USSIC maintained its position that coverage was not triggered. (*See* Compl. ¶ 29.) Jeff Tracy filed suit for breach of contract and declaratory relief on April 2, 2008.

### III.

### *DISCUSSION*

### A. Subject Matter Jurisdiction

Although neither party challenges the Court's subject matter jurisdiction, it is well established that the Court must consider *sua sponte* whether jurisdiction is present. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir.2004). Jeff Tracy asserts claims under both state law and the Declaratory Judgment Act, 28 U.S.C. § 2201, with jurisdiction premised on diversity of citizenship under 28 U.S.C. § 1332. (*See* Compl. ¶ 3.)

■ District courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Generally, the amount in controversy "claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). However, the plaintiff bears the burden of alleging "with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation." *Id.* at 287 n. 10, 58 S.Ct. 586; *see*

*also Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F.Supp.2d 1090, 1095–96 (S.D.Cal.2006).

There is no question about the parties' diversity: Jeff Tracy is a California corporation with its principal place of business in California, while USSIC is a Texas corporation with its principal place of business in Texas. (*See* Compl. ¶¶ 1–2.) The amount in controversy also satisfies the jurisdictional threshold. The Complaint states that "[t]he amount in controversy is in excess of $75,000, exclusive of interests and costs. The DLSE Assessments exceed $400,000." (Compl.¶ 4.) After issuance of the Court's March 26, 2009 Order questioning jurisdiction, Jeff Tracy filed a declaration by its president, stating that: (1) the Osorio Action settled on September 2, 2008, for $136,273.53; (2) the DLSE assessments settled on September 8, 2008, for $238,046.33; and (3) to date, the attorneys' fees billed in connection with the Osorio Action total $149,125.58. (Decl. of Jeff Tracy ¶¶ 6–10.) Accepting this additional information, the Court finds that the amount in controversy exceeds $75,000.

■ As noted, Jeff Tracy seeks relief under the Declaratory Judgment Act. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Where, as here, the claim for declaratory relief is joined with other claims for which there exists an independent jurisdictional basis, "the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir.1998) (quoting *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir.1998)) (inter-

nal quotations omitted). Accordingly, the Court has jurisdiction—both mandatory and permissive—to adjudicate Jeff Tracy's claims.

## B. Standard on Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure "[a]fter the pleadings are closed[,] but early enough not to delay trial." "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1990). In deciding the motion, courts normally limit their review to the pleadings themselves, and if "matters outside the pleadings are presented to and not excluded by the court," the motion is as treated as one for summary judgment, with reasonable opportunity to present pertinent material afforded to each party. Fed.R.Civ.P. 12(d). "Certain written instruments attached to pleadings may be considered part of the pleadings." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003) (Fed.R.Civ.P. 12(b)(6) motion). The Court may also consider documents incorporated by reference into the complaint without converting the motion for judgment on the pleadings into a motion for summary judgment "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.*

Here, the D & O Policy, DLSE assessments, and letters exchanged between the parties in Jeff Tracy's attempt to secure coverage are both attached to the Complaint and relied upon extensively therein. Therefore, these documents may properly be considered in deciding USSIC's motion.

## C. Application

### 1. California Rules of Interpretation

■■■ The parties agree that the D & O Policy should be construed using California law, the law of the forum state. *See Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."); *Commercial Capital Bankcorp, Inc. v. St. Paul Mercury Ins. Co.,* 419 F.Supp.2d 1173, 1179 (C.D.Cal.2006). In California, "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exch.,* 31 Cal.4th 635, 647, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (2003). "A contract must be so interpreted as to give effect to the mutual intention of the parties," Cal. Civ.Code § 1636, which is to be gleaned, to the extent possible, "solely from the written provisions of the contract." *MacKinnon,* 31 Cal.4th at 647, 3 Cal.Rptr.3d 228, 73 P.3d 1205. The language of the contract is to be interpreted as a whole, and provisions are to be read in their "ordinary and popular sense," unless given a special meaning by the parties or through usage. *Id.* at 648, 3 Cal.Rptr.3d 228, 73 P.3d 1205 (quoting Cal. Civ.Code § 1644). The Court will not rewrite any provision of the policy. *Commercial Capital Bankcorp,* 419 F.Supp.2d at 1179.

■■■ Insurance policies are subject to several additional rules of construction. Coverage is interpreted broadly in order to provide the greatest possible protections to the insured, while exclusions are interpreted narrowly against the insurer. *MacKinnon,* 31 Cal.4th at 648, 3 Cal. Rptr.3d 228, 73 P.3d 1205. Moreover, exclusionary provisions must be clear and conspicuous. *Id.* Finally, "[t]he burden is on the insured to establish that the claim

is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded." *Id.*

■ Jeff Tracy argues that the broader "duty to defend" standard applies to this case. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.2008). Unless the terms of the policy provide otherwise, California law imposes upon the insurer a duty to defend the insured if the underlying complaint asserts claims for damages potentially covered under the policy. *Id.* "If any of the claims in the underlying complaint are covered, the insurer has a duty to defend the entire action." *Id.*

■ However, "D & O policies generally do not obligate the carrier to provide the insured with a defense.... More likely, they require the carrier to reimburse the insured for defense costs as an ingredient of 'loss,' a defined term under the policy." *Pan Pac. Retail Props., Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 970 (9th Cir. 2006) (quoting *Helfand v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 10 Cal. App.4th 869, 879, 13 Cal.Rptr.2d 295 (1992)) (quotation marks and internal citations omitted).

■ Here, the D & O Policy clearly and conspicuously disclaims the duty to defend (*see* Compl., Ex. 1 at 18, 44). Citing *Gon v. First State Insurance Company*, 871 F.2d 863 (9th Cir.1989), Jeff Tracy seems to suggest that, disclaimers notwithstanding, the duty to defend or "potential for coverage" standard applies when the insurer is obligated to pay defense costs on an as-incurred basis. (*See* Opp. to Mot. Judgment on Pleadings ("MJOP") at 6.)

*Gon* does not explicitly so hold. In *Gon*, the Court of Appeals for the Ninth Circuit affirmed a district court's order requiring an insurance company to contemporaneously pay all legal expenses of the insured in an underlying lawsuit. 871 F.2d at 864.

The district court found that the insurer had a duty to defend and a separate duty to pay defense costs on an as-incurred basis under the terms of the policy. *Id.* at 865. In affirming the district court's decision, the panel held that the insurer did not have a duty to defend, but the absence of that duty was not "crucial" because "[t]he obligation actually enforced by the district court's decision was a duty, under the policy, to pay defense expenses as incurred." *Id.* at 868. Notably, the Ninth Circuit did not hold that the duty to defend or "potential for coverage" standard still applied. Indeed, the insurer agreed, at least tacitly, that certain claims in the underlying action were covered under the policy, *see id.* at 864, thereby obviating the need to determine whether the insured must show a potential for coverage.

Moreover, imposing a duty to pay all defense costs once a potential for coverage is shown runs contrary to the terms of the policy. Under Condition D, the **"Insureds,"** not USSIC, "must defend any **Claim** against them." (Compl., Ex. 1 at 44.) Jeff Tracy is barred from admitting liability, stipulating to any judgment, or incurring any Defense Cost without USSIC's prior approval. (*Id.*) "Only those settlements, stipulated judgments, and **Defense Costs** to which the Insurer has consented will be recoverable as **Loss** under the Policy." (*Id.*) The parties also agreed to allocate Loss payments when a Claim involves both covered and uncovered Loss. (*Id.*) And if the parties "are unable to agree upon an allocation, then until a final allocation is agreed upon or determined ... the Insurer will be obligated to make an interim payment of that amount or portion of **Loss,** including **Defense Costs,** which the parties agree is not in dispute." (*Id.*) Thus, USSIC's duty to pay Defense Costs is tempered by Jeff Tracy's obligation to provide its own defense, obtain USSIC's approval before incurring De-

fense Costs, and to allocate between covered and uncovered Defense Costs. These conditions are not consistent with the broader duty to defend standard. "[R]ather than paying premiums for the right to a defense of all potentially covered claims, Plaintiff in this case paid (presumably lower) premiums for a lesser right.... To require Defendant to advance all of Plaintiff's defense costs on a current basis despite ... the parties' contrary intent would give Plaintiff an un-bargained-for windfall." *Commercial Capital Bankcorp*, 419 F.Supp.2d at 1182.

Accordingly, the duty to defend standard does not apply. Jeff Tracy must establish that the underlying claims are within the basic scope of coverage. If Jeff Tracy meets its burden, USSIC must demonstrate that the claims are specifically excluded. If Jeff Tracy is unable to meet its burden, or if USSIC successfully establishes that an exclusion applies, USSIC did not breach its obligations under the D & O Policy and is entitled to judgment in its favor.

### 2. The Basic Scope of Coverage

 The D & O Policy obligates USSIC to "pay to or on behalf of [Jeff Tracy] **Loss** arising from **Claims** first made against [it] during the **Policy Period** ... for **Wrongful Acts.**" (Compl., Ex. 1 at 34.) Thus, to show that the Osorio Action and DLSE assessments are within the basic scope of coverage, Jeff Tracy must demonstrate that: (1) a claim was made during the policy period (2) involving a Wrongful Act that (3) results in a Loss. (*See* Pl's Mot. for Summary Judgment at 10–11.) It is uncontested that the Osorio Action and DLSE assessments constitute Claims first made during the Policy Period for Wrongful Acts, but USSIC maintains that no Loss has resulted.

The D & O Policy defines Loss as "**Defense Costs** and any damages, settle-ments, judgments, back pay awards and front pay awards or other amounts ... that an **Insured** is legally obligated to pay as a result of any **Claim.**" (Compl., Ex. 1 at 36.) "[W]ages, fines, taxes or penalties or matters that are uninsurable" by law are not included. (Compl., Ex. 1 at 36.)

The Osorio Action plaintiffs' first, second, and fourth causes of action sought relief in the form of unpaid wages, specifically, "the difference between the prevailing wage rate and the wages paid to Plaintiffs." (Compl., Ex. 2 at 68.) The third cause of action sought penalties pursuant to Cal. Lab.Code § 203 and 203.5. (Compl., Ex. 2 at 68.) The fifth cause of action sought restitution of unpaid wages for Jeff Tracy's alleged violations of the unfair competition law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"). (*See* Compl., Ex. 2 at 67.) The DLSE assessments charged Jeff Tracy with "wages due and penalties" pursuant to Cal. Lab.Code §§ 1775, 1813. (*E.g.*, Compl., Ex. 3 at 72.) Because wages and penalties are explicitly excluded from the definition of Loss, Jeff Tracy is barred from obtaining coverage in connection with the Osorio Action and DLSE assessments under the terms of the policy.

Relying on *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 174–75, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000), Jeff Tracy argues that wages are considered damages under the California Civil Code and, therefore, must be considered Loss under the D & O Policy. (Pl.'s Opp. to Mot. for Judgment on the Pleadings at 23–24.) In determining the available remedies under the unfair competition law, Bus. & Prof.Code § 17200 *et seq.* ("UCL"), the *Cortez* court noted that "wrongfully withheld salary payments are 'damages' under Civil Code section 3281 et seq." *Id.* at 174–75, 96 Cal.Rptr.2d 518, 999 P.2d 706. *Cortez* does not, however,

hold that in an insurance coverage dispute, the statutory damages definition prevails *in toto* over specific policy carve-outs. To hold that the damages definition contained in the D & O Policy encompasses unpaid wages would render that clause explicitly excluding wages meaningless in contravention of California's well-established rules of interpretation. *See MacKinnon,* 31 Cal.4th at 647, 649, 3 Cal.Rptr.3d 228, 73 P.3d 1205.

Jeff Tracy contends that the relief sought in the Osorio Action should be considered back pay, which the D & O Policy includes within the meaning of Loss. (*See* Pl.'s Mot. for Summary Judgment at 13–14.) According to Jeff Tracy, "no technical meaning can be attributed to the term 'back pay awards' and the reasonable understanding of that term includes payment for past work." (Pl.'s Mot. for Summary Judgment at 14.) To support this proposition, Jeff Tracy cites to *SWH Corp. v. Select Insurance Company,* Nos. G036145, G036627, 2006 WL 2786930 (Cal.App. Oct.19, 2006).[1] In *SWH Corp.,* the insured on a directors and officers indemnification insurance policy brought suit against the insurer to recover defense and settlement costs incurred in defending a putative wage and hour class action. *See id.* at *3–4. In holding that the settlement proceeds incurred in the underlying action constituted covered "back pay awards," the court reasoned that the "ordinary and popular" meaning of back pay should apply absent a manifest "intent to use a technical or special meaning" in the policy. *Id.* at *10.

Material differences in the D & O Policy and the policy at issue in *SWH Corp.* prevent the Court from reaching a similar conclusion in the case at bar. In *SWH Corp.,* the policy defined "Loss" as amounts the insured becomes obligated to pay for claims against the insured, "includ-

ing but not limited to damages, judgments, settlements, front pay awards, back pay awards, Defense Costs and/or punitive or exemplary damages or the multiple portion of any multiplied damage award if such damages are insurable under the law pursuant to which this policy is construed.... Loss does not include: (1) *Benefits* of the Insured Persons; ... (6) matters uninsurable under the law pursuant to which this Policy is construed." *Id.* at *2 (quoting policy, italics in opinion). Here, by contrast, the D & O Policy expressly excludes wages within the meaning of Loss. If the Court interpreted "back pay awards" as simply "payment for work done in the past," *id.* at *10, the Loss provision would be rendered nonsensical. On the one hand, Jeff Tracy would receive coverage for Loss in the form of wages in arrears, but, on the other, would be precluded from coverage in the form of wages generally. The Court declines to read such ambiguity into the policy. *See Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 18–19, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995).

### 3. Exclusion F

 USSIC further maintains that certain exclusions preclude coverage for the Osorio Action and DLSE assessments. Because the Court agrees that Exclusion F, the so-called "insured-versus-insured" exclusion, precludes coverage, the Court does not address the remaining exclusions cited by USSIC, exclusions L and P.

Exclusion F bars coverage for Claims "brought by or on behalf of, or in the name or right of, the **Insured Organization,** whether directly or derivatively, or any **Insured Person.**" (Compl., Ex. 1 at 39.) Under subsection (3) of Exclusion F, the exclusion does not apply to claims brought by Insured Persons for any actual or al-

---

1. *SWH Corp.* is an unpublished opinion decided prior to January 1, 2007 and, as such, is uncitable and non-binding under Ninth Circuit Rule 36–3(a), (c).

**1006**

leged "Employment Practices Wrongful Act," defined as "actual or alleged: (1) **Discrimination,** (2) **Retaliation,** (3) **Sexual Harassment,** (4) **Workplace Harassment,** (5) **Workplace Tort,** (6) **Wrongful Termination,** or (7) Violation of the Family and Medical Leave Act." (Compl., Ex. 1 at 35, 39.) Through Endorsement Number 5, however, the parties deleted this exception from the Exclusion and agreed that USSIC "will not be liable to make any payment of **Loss** in connection with any **Claim** for an **Employment Practices Wrongful Act.**" (Compl., Ex. 1 at 23.) In other words, the parties amended Exclusion F to bar coverage for insured-versus-insured Claims, even when those Claims involved an Employment Practices Wrongful Act.

The Osorio Action was filed by former employees, Insured Persons, against Jeff Tracy, the Insured Organization. (*See* Compl., Ex. 2 at 55, ¶ 1.) The Osorio Action thus falls squarely within Exclusion F.

As Jeff Tracy acknowledges, the DLSE assessments "arise out of the same or similar facts and circumstances" as the Osorio Action. (Pl.'s Opp. to Mot. for Judgment on the Pleadings at 12.) Under Condition (C), "All **Claims** alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions, or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made." (Compl., Ex. 1 at 44.) Accordingly, the Osorio Action and DLSE assessments may be considered a single Claim for purposes of Exclusion F.[2]

▆▆▆ Jeff Tracy disputes the applicability of Exclusion F on three grounds.

First, USSIC purportedly waived its ability to assert Exclusion F with respect to the DLSE assessments by stating in its January 10, 2008 letter that "[t]he positions taken by the Insurer with respect to the DLSE Assessments are not and were never in any way based on Exclusion (F)." (Compl., Ex. 24 at 164.) "Case law is clear that '[w]aiver is the intentional relinquishment of a known right after knowledge of the facts.'" *Waller,* 11 Cal.4th at 31, 44 Cal.Rptr.2d 370, 900 P.2d 619 (internal quotation marks and citations omitted). The party claiming a waiver bears the burden to prove it by clear and convincing evidence, with "doubtful cases ... decided against a waiver." *Id.* (internal quotation marks and citations omitted). "[A] denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." *Id.* Here, Jeff Tracy does not meet its burden to establish USSIC's intentional relinquishment of Exclusion F. Read in the context of the letter as a whole, USSIC's statement simply clarifies an apparent "misunderstanding" regarding what exclusions had been and were then being advanced. *See Cal. Dairies, Inc. v. RSUI Indem. Co.,* 617 F.Supp.2d 1023, 1048 n. 11 (E.D.Cal.2009) (insurer's failure to advance exclusion in final denial of coverage did not constitute waiver). USSIC did not relinquish its ability to assert Exclusion F in the future; indeed, in closing, USSIC "specifically reserve[d] the right to raise additional coverage issues and defenses." (Compl., Ex. 24 at 165.)

▆▆▆ Second, Jeff Tracy avers that the Osorio Action and DLSE assessments are not related for purposes of Exclusion F because:

**2.** Because the Osorio Action and DLSE assessments are considered a single Claim under Exclusion F, the Court does not reach the parties' arguments concerning on whose behalf or in whose name the assessments were brought.

The language of Conditions subpart (C) relates to the subparts that precede it within the Conditions section and serves the purpose of limiting USSIC's liability to a single limit for related "Claims" and to clarify that once notice is provided regarding one "Claim," that notice is sufficient for subsequent "Claims" that arise out of the same set of facts and circumstances. (Pl.'s Opp. to Mot. for Judgment on the Pleadings at 12.) Neither the explicit language of the policy nor the placement of Condition (C) support Jeff Tracy's reading. Condition (C), by its terms, is not required to be read solely in conjunction with the policy's liability limits or notice provisions. Although the condition appears after Condition (B), entitled "Notice of **Claims** and Reporting Provisions," it is not, as Jeff Tracy suggests, a subset of Condition (B). Given the structure of the D & O Policy, one would reasonably expect all subparts of Condition (B) to be numbered consistently and listed together within and beneath that condition. Condition (c), by contrast, is set out separately and, unlike the clear subparts of Condition (B), enumerated by use of a capital letter.

Additionally, it is unnecessary to interpret Condition (C) as "limiting USSIC's liability to a single limit for related 'Claims,'" given that Condition (A)(1) already provides that "[t]he Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period** will not exceed the [$1,000,000] Limit of Liability set forth in [the policy]." (Compl., Ex. 1 at 18, 34.)

■■■ Jeff Tracy also argues that application of Exclusion F would render coverage illusory because "the claims which would be covered [under the D & O Policy] are predominantly those brought by employees, but those claims would not be covered according to USSIC's interpretation." (Pl.'s Mot. for Summary Judgment at 17.) Insurance coverage is deemed illusory when the insured "receives no benefit" under the policy. *Md. Cas. Co. v. Reeder*, 221 Cal.App.3d 961, 978, 270 Cal. Rptr. 719 (1990). Even if employee actions are the *predominant* type of Claim envisioned under the policy, Jeff Tracy does not show that application of Exclusion F would eliminate coverage entirely. *See Mt. Hawley Ins. Co. v. Fed. Sav. & Loan Ins. Corp.*, 695 F.Supp. 469, 484–85 (C.D.Cal.1987) (coverage not illusory where policy covered customer and government claims, but not the underlying action).

Jeff Tracy's account of the parties' intentions in creating coverage does not comport with what was apparently bargained for. If the parties truly intended to insure primarily against employee claims, one would reasonably expect to find endorsements expanding coverage in the relevant areas of the policy. Here, however, the parties separately agreed "[i]n consideration for the premium charged" to eliminate what limited employee coverage existed through Endorsement Number 5. (Compl., Ex. 1 at 23.) Judging from the written provisions of the policy, *see MacKinnon*, 31 Cal.4th at 647, 3 Cal. Rptr.3d 228, 73 P.3d 1205, coverage of employment claims was not the primary intent of the parties. Application of Exclusion F does not render coverage illusory.

### IV.

### *CONCLUSION*

USSIC meets its burden to show that Exclusion F precludes coverage of both the Osorio Action and DLSE assessments. Because the Osorio Action and DLSE assessments did not involve Loss, as defined in the D & O Policy and were, in any event, precluded by Exclusion F, USSIC did not breach the agreement by denying

coverage. For the foregoing reasons, the Court grants USSIC's Motion for Judgment on the Pleadings and denies Jeff Tracy's Motion for Summary Judgment or, in the Alternative Partial Summary Judgment.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties in this action.